**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jimmie A. WYNN, Defendant–Appellant.**

**No. 92–5584.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 28, 1993.

Decided Feb. 26, 1993.

Rehearing Denied May 10, 1993.

James R. Dedrick, J. Edgar Schmutzer, Asst. U.S. Attys. (argued and briefed), Jerry G. Cunningham, U.S. Atty., Knoxville, TN, for U.S.

James A.H. Bell (argued and briefed), Law Offices of James A.H. Bell, Knoxville, TN, for defendant-appellant.

Before: MARTIN, MILBURN, and NORRIS, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Jimmie Arvey Wynn appeals his conviction, following a jury trial, of five counts of causing Charles Hensley to use an interstate facility to solicit murder, in violation of 18 U.S.C. § 1958. We affirm Wynn's conviction, but remand his case for resentencing.

On November 20, 1991, Jimmie Arvey Wynn was indicted by a grand jury on five counts of violating 18 U.S.C. § 1958. That statute prohibits the use, or causing the use, of an interstate facility to solicit murder, with money as consideration. The indictment charged Wynn with the federal offense of causing Charles Hensley to use a telephone to solicit the murder of Wynn's ex-wife, Helen Shaw, in violation of the laws of Tennessee, as consideration for money payment. Wynn was convicted by a jury on each of the counts in the indictment.

Prior to the United States' presentation of its evidence, Wynn objected to the introduction of testimony under Fed.R.Evid. 404(b) concerning his prior bad acts. The district court overruled Wynn's objection, to the extent that evidence which showed motive, intent, or design on Wynn's part would be admissible.

Helen Shaw was the United States' first witness, and it was her testimony that Wynn had tried to have excluded. Shaw testified that she was divorced from Wynn in 1986. Following the divorce, she was hospitalized for injuries received in an automobile accident. She testified that Wynn threatened her life and came to the hospital to smother her and that she went to Texas following the divorce. Shaw testified that Wynn followed her to Texas and forced her at gunpoint to go to a hotel where Wynn showed her a briefcase with what appeared to be a bomb and threatened to blow her up. Shaw also testified that Wynn tried to force her into a car at gunpoint in Etowah, Tennessee. Shaw testified that Wynn had been tried for these offenses but had been acquitted.[1] In addition, Shaw testified that Wynn threatened her life following his earlier trial.

According to Charles Hensley, Wynn's co-conspirator, Wynn prompted Hensley to solicit the murder of Helen Shaw. Hensley testified that Wynn gave information about Shaw to Hensley, was present on several occasions while Hensley arranged by telephone for her murder, and agreed to pay for her murder.

1. Shaw did not indicate what the charges Wynn had been acquitted of were, which of the incidents that she mentioned were introduced into evidence at that trial, or where Wynn had been tried. The record does not show this information, either, but the particulars of his prior trial are not pertinent to resolving this appeal and in the context of this case, if objected to, were harmless error.

According to Hensley's testimony and the testimony of the other witnesses for the United States, Hensley first called Gene Neeley to solicit Shaw's murder. Gene Neeley contacted the Knoxville Police Department, saying that he had been solicited by Charles Hensley to commit a murder for $2,000. The Knoxville Police gave Neeley recording equipment and contacted the Federal Bureau of Investigation. The Knoxville Police and the FBI agreed to use an undercover agent to act as a prospective murderer and told Neeley to arrange communications between the person who had called him and the undercover agent. Neeley arranged the first of several phone calls between the undercover agent and Hensley to arrange the murder for $2,000. The phone calls were between Tennessee and Georgia. After Hensley arranged to have Shaw murdered, he and Wynn left to make the initial payment to the undercover agent. On their way, they were arrested by the FBI, and Wynn had approximately $2,000 in his possession.

During the United States' presentation of its case, it did not present any evidence which showed that murder violates the laws of the State of Tennessee. After the United States put on its evidence, Wynn moved for a directed verdict, claiming that the United States had failed to prove one element of its case: that murder is a violation of Tennessee law. The United States asked that the district court take judicial notice of Tennessee's murder law, arguing that the defendant could, if Tennessee had no law against murder, use that fact as an affirmative defense. Wynn argued that the burden of proving this element of the offense was upon the prosecution. The district court overruled the defendant's motion.

During its instructions to the jury, the district court gave an instruction that Tennessee law defined murder as the premeditated killing of another person. In addition, the district court stated, "Now in weighing the evidence, the jury should look not only to the number of witnesses...." There is no record of an objection to this part of the jury instruction. The jury found Wynn guilty on all five counts.

We believe that the district court properly admitted evidence concerning Wynn's prior threats and violence to Helen Shaw. To admit evidence of prior bad acts under Rule 404, the evidence must be probative of a "material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). In addition, under Rule 403, the district court must determine whether the probative value of the evidence outweighs the danger of unfair prejudice. *Id.* at 687, 108 S.Ct. at 1500. This court first followed the two-part test of *Huddleston* in *United States v. Feinman*, 930 F.2d 495, 499 (6th Cir.1991).

Helen Shaw's testimony was relevant to show Wynn's intent. Rule 404 of the Federal Rules of Evidence, in effect at the time of Wynn's trial, provides:

(a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion,....

....

(b) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.[2]

Wynn objected to the introduction of Helen Shaw's testimony regarding his

---

**2.** Rule 404 was amended, effective December 1, 1991, to provide in criminal cases that the prosecution, upon motion of the defendant, provide notice to the defendant of its intent to introduce evidence regarding prior bad acts of the defendant. Wynn does not object to the notice he received of the United States' intent to introduce this type of evidence.

prior assaults, rapes, and kidnapping of her, claiming that it was merely proof of his bad character and not for any proper purpose. Use of prior criminal actions to show intent is appropriate, and longstanding, under Rule 404 in this circuit. *E.g., United States v. Denton,* 336 F.2d 785 (6th Cir.1964) ("That prior offenses of a like nature to that charged may be proved to show guilty intent is well established.") (citations omitted). To be admissible, evidence of defendant's prior bad acts must be substantially similar and reasonably near in time to the charged offense. *United States v. Blankenship,* 775 F.2d 735, 739 (6th Cir.1985). Here Shaw testified that Wynn's prior threats and assaults occurred between one and five years prior to the Hensley phone calls, and in *United States v. Ismail,* 756 F.2d 1253, 1260 (6th Cir. 1985), we have stated that four years is not too long to be reasonably probative of intent. The district court properly ruled that it would allow evidence regarding Wynn's prior threats against Shaw's life and attempts against her life because that evidence showed that Wynn possessed the requisite intent to have Shaw murdered.

Evidence regarding Wynn's prior bad acts was not substantially more prejudicial than probative. Rule 403 of the Federal Rules of Evidence provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Wynn objected to the introduction of Helen Shaw's testimony regarding his prior assaults against her, claiming that its prejudicial effect substantially outweighed its probative value. The district court ruled that it would allow testimony regarding threats against Shaw's life and attempts against her life, but not other bad acts, because they showed that Wynn had motive and intent. In so ruling, the district court implicitly, but not explicitly, ruled that the prejudicial effect of that testimony was outweighed by its probative value.

■ The district judge has wide discretion in determining whether particular evidence is more prejudicial than probative. *Feinman,* 930 F.2d at 499 (citing *United States v. Dabish,* 708 F.2d 240, 243 (6th Cir.1983)). The standard on review is "abuse of discretion." *Id.* (citing *United States v. Holloway,* 740 F.2d 1373, 1377 (6th Cir.1984)).

Helen Shaw's testimony was not substantially more prejudicial than probative. Wynn's intent to kill his wife, or have her killed, was crucial for determining his guilt or innocence. Opposed to this need is the grave concern that juries will convict defendants who appear to be "bad people." The district court gave a limiting instruction to ensure that the jury did not use evidence of Wynn's intent for any other purpose. On balance, the district court did not abuse its discretion and properly allowed Shaw to testify regarding Wynn's prior bad acts.

■ The district court also properly refused to direct a verdict for Wynn even though the United States failed to prove that murder is a crime in Tennessee. When apprised of the fact that it had not shown that murder violates Tennessee's law, the prosecution asked that the court take judicial notice of Tennessee's murder statute. The district court refused to direct a verdict for the defendant, and it also took no judicial notice during the presentation of evidence of Tennessee's murder statute. The only time that the jury was told that murder violates a Tennessee statute was when the court gave its instructions to the jury.

According to *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), due process requires that the prosecution bear the burden of proving every fact necessary to constitute a crime beyond a reasonable doubt. *Winship* does not, however, state what "facts" are necessary to be proven under this doctrine. If the statute in this case did not include the words "in violation of the laws of any state or of the United States," then there could be no doubt that the prosecution is not required to show that a particular state law

was violated, or to be violated. The requirement of showing that some state law has been violated appears on first blush to be an element of the crime which the prosecution must prove, not the judge. The district court, however, properly refused to direct a verdict for the defendant and did not commit error when it instructed the jury that murder violates Tennessee law. Our judicial system requires the prosecution to prove facts, not laws. Regarding the presentation of evidence, the phrase "judicial notice" applies to facts, not laws. See Fed.R.Evid. 201. On the other hand, judges, not juries, determine what is the law. E.g., Hanley v. United States, 416 F.2d 1160 (5th Cir.1969). Thus, violation of a state law may be a component of a federal criminal law, but such a component is different from a fact which must be proven under Winship. Winship requires that the prosecution prove every factual element of a crime. In contrast, legal elements, even when required for culpability, may properly be part of the district court's statement of the law when it instructs the jury. In reaching this conclusion, we are fortified by the Fifth Circuit's opinion in United States v. Clements, 588 F.2d 1030 (5th Cir.1979). In that case, the federal statute required that the defendant violate state gambling laws. The prosecution did not show which state gambling laws had been violated, but the court nonetheless summarily affirmed the defendant's conviction.

■ The prosecution presented sufficient evidence for a rational jury to find Wynn guilty beyond a reasonable doubt. Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the standard is that a conviction cannot be affirmed if no rational trier of fact could have found the defendant guilty beyond a reasonable doubt based upon the facts presented. Wynn argues that no rational trier of fact could have determined that he "caused" Hensley to hire someone to murder his wife. Wynn argues that he was not serious when he first said that he wanted Shaw killed, and that he did not, under the statute, "cause" Hensley to hire a hit man. He bases his argument on the contention that Hensley's testimony was not credible. Questions of credibility are primarily for the jury to decide. Brown v. Davis, 752 F.2d 1142, 1147 (6th Cir.1985) ("The jury's resolution of questions of credibility and demeanor ... is entitled to 'special deference.' ") (citations omitted). In addition, even accepting for the sake of argument that Wynn did not initially "cause" Hensley to start hiring a killer, the record is replete with evidence that Wynn participated in the scheme at each step thereafter. Among other incriminating facts, Wynn provided information to Hensley concerning Shaw's address and description, took one phone call himself, and went to get the money to pay the murderer. A rational trier of fact could determine that Wynn was guilty beyond a reasonable doubt of causing Charles Hensley to solicit murder.

■ Despite not preserving his objection at trial, Wynn now appeals his conviction because the district court stated to the jury, "Now in weighing the evidence, the jury should look not only to the number of witnesses...." Wynn argues that the district court committed plain error when it implied that the jury could consider the number of witnesses for each side. The instruction was not plain error. This court stated in United States v. Causey, 834 F.2d 1277, 1280 (6th Cir.1987), "Plain errors are limited to those harmful ones that are so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial." The court's instruction, which is open to question as unnecessary and which easily could have been omitted, does not strike at the fundamental fairness, honesty, or public reputation of the trial because the prosecution presented plenty of evidence, even without this particular instruction, for the jury to find Wynn guilty of the offense charged.

■ We must, however, remand this case for resentencing. The statute, 18 U.S.C. § 1958 (1989 & Supp.1992), provides a maximum penalty of ten years' imprisonment for solicitation of murder over an interstate facility if no bodily injury or death results. In this case, Helen Shaw was not injured, so the ten-year maximum

applies. Despite the statutory maximum of 120 months, the district court sentenced Wynn to 130 months. The United States now argues that each phone call for which Wynn was charged was a separate offense. We reject this argument, choosing to follow the logic of our prior decisions concerning this statute. We said in *United States v. Wilson*, 920 F.2d 1290, 1294 (6th Cir. 1990), that separate phone calls which are violations of 18 U.S.C. § 1958 must be grouped together under the sentencing guidelines if they are connected with the murder of one individual. So too, separate phone calls which relate to one plan to murder one individual constitute only one violation of 18 U.S.C. § 1958. Therefore, sentencing Wynn beyond the statutory maximum plainly violated his right to due process under the fifth amendment to the United States Constitution. Accordingly, we vacate Wynn's sentence and remand for resentencing. See *United States v. Sims*, 975 F.2d 1225, 1241 (6th Cir.1992).

Wynn's conviction is affirmed, and this case is remanded to the district court for resentencing.