16 F.3d 1223
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Sasone WILSON, Defendant-Appellant.
 No. 93-2068.
 United States Court of Appeals, Sixth Circuit.
 Jan. 7, 1994.
 
 Before: MERRITT, Chief Judge; and SUHRHEINRICH and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Sasone Wilson appeals her convictions for bank embezzlement and for false entries by an employee with intent to deceive auditors and examiners of the United States in violation of 18 U.S.C. Secs. 256 and 1005. The issues raised are whether the district court erred by: (1) allowing the introduction of an admission given by the defendant to the FBI; (2) permitting the prosecution to ask the defendant about prior losses at the bank and if she had lied to the FBI; and (3) responding to a jury inquiry without consulting with counsel. For the reasons stated below, we affirm the decision of the district court.
 
 I.
 
 2
 Wilson was employed as a teller at a branch of the First America Bank in Lansing, Michigan. At the end of work on March 18, 1992, she recorded that she had $28,628.27 in her cash box and that she was "in balance." On Saturday, March 21, 1992, a substitute teller, John Rambo, was assigned to use Wilson's cash box. Upon receiving Wilson's cash box, Rambo and a senior teller performed a "dual control" counting of the money in Wilson's box, which revealed a $7,500 shortage in Wilson's box, i.e., the amount of cash in the box was $7,500 less than the amount reflected on the teller balance sheet that Wilson had prepared at the end of work on March 18, 1992.
 
 
 3
 When Wilson returned to work on Tuesday, March 25, 1992, she was not told of the shortage in her cash box. The contents of the cash box were counted in her presence, and the discrepancy of $7,500 was again confirmed. Wilson was unable to offer any explanation for the missing money and was discharged.
 
 
 4
 The FBI initially interviewed Wilson in October 1992 regarding the missing money. On January 25, 1993, Wilson was voluntarily interviewed at the FBI offices in Lansing, Michigan about the missing money; during that interview, Wilson submitted to a polygraph examination administered by Agent Steven Kives. Before beginning the polygraph test, Kives explained to Wilson the procedure, and Wilson signed a waiver of her rights under Miranda v. Arizona, 384 U.S. 436 (1966).
 
 
 5
 After the polygraph test, Wilson claims that, in reviewing the results with her, Kives informed her that she had failed the polygraph. Wilson claims that, once the test was over, she asked Kives if she could leave, but that Kives suggested that she wanted to leave so that she could talk to others and "change her mind" and that "she should try and get the whole matter over then." During the course of her interview with Kives following the polygraph, Wilson admitted that she had taken the money. As Wilson gave her statement, Kives wrote it down; once completed, Wilson initialled and signed her confession. In addition to admitting that she was responsible for the $7,500 missing in March of 1992, Wilson also admitted that she had taken money from the bank on other occasions beginning in December 1991. Wilson now states that the only reason she confessed to the FBI was that she was upset and thought that it was the quickest way to end her interview. Wilson testified that she thought she was at the FBI offices for about three hours.
 
 
 6
 Before trial, Wilson moved to suppress her written confession. After holding a hearing on Wilson's motion to suppress, the district court denied the motion and found that Wilson's statement was given voluntarily in a non-custodial setting. The court determined that the government had met the foundational requirements for introducing Wilson's statement.
 
 II.
 
 7
 Wilson contends that the district court erred in denying her motion to suppress her January 25, 1993, written statement to the FBI. Wilson argues that the actions of the FBI during the course of her interview were coercive, thereby rendering her confession involuntary. Wilson further contends that she was in custody, that she did not knowingly waive her Miranda rights, and that she should have been "re-advised" of her rights.
 
 
 8
 In evaluating a determination of the voluntariness of a confession, a reviewing court examines the district court's findings of specific external occurrences and events surrounding the confession for clear error. United States v. Murphy, 763 F.2d 202, 206 (6th Cir.1985), cert. denied sub nom. Stauffer v. United States, 474 U.S. 1063 (1986). However, the reviewing court makes a de novo determination of how the accused "reacted to the external events and the legal significance of how he reacted." Id.
 
 
 9
 Determining the voluntariness of a confession requires an examination of the totality of the circumstances surrounding the confession and an assessment of the psychological impact of those circumstances on "the accused's ability to resist pressures to confess." United States v. Murphy, 763 F.2d at 205 (citing United States v. Brown, 557 F.2d 541, 546 (6th Cir.1977)). See also 18 U.S.C. Sec. 3501(b). Courts have considered many factors including "the age of the accused, his level of education or intelligence, his physical condition and emotional state at the time of the confession ... and the inherent coerciveness of the setting in which the confession was given." United States v. Murphy, 763 F.2d at 205.
 
 
 10
 Wilson argues that during the course of her January 25, 1992, interview, the FBI exerted improper influence on her and coerced her into confessing. The Sixth Circuit has set out three requirements for a finding that a confession was involuntary due to police coercion:
 
 
 11
 (1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear the defendant's will; and (3) defendant's will was, in fact, overborne as a result of the coercive police activity.
 
 
 12
 United States v. Rigsby, 943 F.2d 631, 635 (6th Cir.1991), cert. denied, 112 S.Ct. 1269 (1992).
 
 
 13
 The district court properly found that there was nothing objectively coercive in the actions of the FBI. If, as Wilson claims, Kives informed her that she had failed the polygraph test, there was nothing inherently coercive in his truthfully doing so. See Bae v. Peters, 950 F.2d 469, 475 (7th Cir.1991). As the district court pointed out, nothing in the record indicates that the FBI acted improperly in interviewing Wilson.
 
 
 14
 Even if the FBI's actions were objectively coercive, we find no evidence that the FBI's actions were sufficient to and did actually overbear Wilson's free will. Wilson alleges that Kives intimated to her that if she confessed, she would merely have to pay a fine and that "nothing serious would happen to her." Wilson suggests that such statements constituted promises that coerced her into confessing. However, we have recognized that, in order to render a confession involuntary, a promise of leniency must rise to the level of an "irresistible inducement." United States v. Wrice, 954 F.2d 406, 411 (6th Cir.), cert. denied, 112 S.Ct. 2286 (1992).
 
 
 15
 Nothing in the record indicates that any promises were made by the FBI to Wilson that could amount to "irresistible inducement." During the suppression hearing, Wilson testified that she asked Kives what would happen if she signed a written confession. However, Wilson conceded that Kives did not guarantee or promise her anything.
 
 
 16
 Finally, Wilson claims that she was emotionally overwrought, that she was nervous, and that she wanted to leave. However, this court has recognized that "emotionalism and confusion" alone are insufficient to render a confession involuntary. McCall v. Dutton, 863 F.2d 454, 460 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989). Furthermore, the district court found that Wilson, though emotional, was intelligent, understood the nature of the proceedings, and knowingly signed the waiver.
 
 
 17
 Wilson also claims that her interview with the FBI constituted a custodial interrogation, and that her rights under Miranda were violated. As in the case of a voluntariness determination, the district court's factual findings are reviewed for clear error and the district court's legal conclusions are reviewed de novo. United States v. Murphy, 763 F.2d at 206. For an individual to be "in custody," there must be a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." United States v. Warner, 971 F.2d 1189, 1201 (6th Cir.1992). Under this objective standard, United States v. Macklin, 900 F.2d 948, 950 (6th Cir.), cert. denied, 498 U.S. 840 (1990), there is nothing to indicate that a reasonable person in Wilson's position would have understood the situation as one of being "in custody." As the district court pointed out, Wilson never testified that she thought she would be detained overnight. Wilson was not under arrest at the time of her confession, and she submitted to the FBI interview voluntarily. Additionally, Wilson was advised of her Miranda rights prior to the polygraph test.
 
 III.
 
 18
 The government moved to cross-examine Wilson about certain unexplained losses at her teller window a few months before the discovery of the $7,500 loss. In late 1991, Wilson's teller window came up short several times; the losses totalled about $700. Over objection by Wilson's attorney, the district court permitted the Government to inquire about the earlier losses pursuant to Federal Rule of Evidence 404(b).
 
 
 19
 Evidentiary decisions of the district court under Rule 404(b) are reviewed for an abuse of discretion. United States v. Okayfor, 996 F.2d 116, 120 (6th Cir.1993). Federal Rule of Evidence 404(b) provides that evidence of other crimes or bad acts is not admissible "to prove the character of a person in order to show action in conformity therewith"; however, such evidence is admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...."
 
 
 20
 Evidence of prior bad acts is appropriate to show intent, provided that the bad acts involved are "substantially similar and reasonably near in time to the charged offense." United States v. Wynn, 987 F.2d 354, 357 (6th Cir.1993). Additionally, such evidence, though meeting the above-mentioned criteria, will be excluded if the probative value is substantially outweighed by the prejudicial effect. Id.; Fed.R.Evid. 403.
 
 
 21
 Clearly the other losses in question are substantially similar to the charged offense. The other shortages occurred in late 1991, less than one year before the loss of $7,500 from Wilson's teller cash box. This court has held that prior acts occurring as long as four or five years before the charged offenses constitute events reasonably near in time and are still probative of intent. United States v. Wynn, 987 F.2d at 357. If anything, the probative value regarding intent from the prior losses is even greater given the proximity in time to the loss of $7,500.
 
 
 22
 One of the concerns underlying Rule 404(b) is that a jury, presented with evidence of a defendant's prior bad acts, might convict just because the defendant is a "bad person." United States v. Wynn, 987 F.2d at 357. However, in the present case, the jury was given a cautionary instruction as to Wilson's prior acts, thereby countering any prejudicial effect. Finally, there is nothing in the record demonstrating that the prejudicial effect of the prior cash shortages substantially outweighed the probative effect.
 
 IV.
 
 23
 On cross-examination, the Government asked Wilson if she had lied when she told the FBI that she had taken $7,500 from her teller cash box. Over objection by Wilson's attorney, the district court allowed the Government to question Wilson about the truthfulness of her statements to the FBI. On appeal, Wilson contends that the district court improperly allowed the Government to question a witness about the credibility of a witness's testimony, a matter that Wilson contends is solely within the purview of the jury.
 
 
 24
 This contention has no merit. Wilson's argument fails to distinguish between asking a witness about his own truthfulness and asking a witness to assess the credibility or truthfulness of the testimony of another witness. In asking Wilson whether she lied to the FBI in making her confession, the Government was, in essence, asking her a question of fact that was properly within the scope of cross-examination. Fed.R.Evid. 611.
 
 V.
 
 25
 During its deliberations, the jury asked the district court for a particular excerpt of the transcript of Wilson's testimony. Without consulting counsel, the district court supplied the jury with the requested excerpt. Wilson contends that the actions of the district court constitute reversible error.
 
 
 26
 Federal Rule of Criminal Procedure 43(a) provides that a criminal defendant "shall be present at every stage of the trial." Whereas other circuits have held that Rule 43 requires the defendant's presence during replies to questions raised by the jury, see, e.g., United States v. Birges, 723 F.2d 666 (9th Cir.), cert. denied, 466 U.S. 943 (1984), this court, though recognizing the breadth of the right enunciated in Rule 43, United States v. Davis, 809 F.2d 1194, 1202 (6th Cir.), cert. denied, 483 U.S. 1007 (1987), has not addressed that specific issue.
 
 
 27
 However, assuming that the district court's actions are inconsistent with Rule 43, it does not rise to the level of reversible error. Given the other evidence presented supporting the jury's guilty verdict, no prejudice was caused by the district court's action. Therefore, if error was committed, it was harmless.
 
 
 28
 The judgment of the district court is AFFIRMED.