25 F.3d 1051
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Elijah SMITH a/k/a Elijah Jones and William Gillard,
Defendants-Appellants.
 Nos. 93-3275, 93-3305.
 United States Court of Appeals, Sixth Circuit.
 May 27, 1994.
 
 Before: MARTIN, SUHRHEINRICH and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants Elijah Smith and William Gillard were charged with bank robbery (Count I, Fifth Third Bank, and Count III, Society Bank) under 18 U.S.C. Sec. 2113(a) and (d); and use of a firearm during a violent offense (Counts II and IV) in violation of 18 U.S.C. Sec. 924(c). Defendant Smith also was charged in Count V with a violation of 18 U.S.C. Secs. 922(g)(1) and 924(e), unlawful possession of ammunition after conviction of three violent offenses. The jury found Gillard guilty of all four of the counts with which he had been charged and found Smith guilty of Counts III, IV, and V. Defendants appeal their convictions, arguing that inadmissible evidence of other crimes unfairly prejudiced their defense. In addition, Smith appeals the sufficiency of the government's evidence against him.
 
 
 2
 We AFFIRM the convictions of both defendants.
 
 I.
 
 3
 On February 3, 1992, three armed, masked, black males robbed Fifth Third Bank in Toledo, Ohio, of approximately $9,000. During the robbery, one of the perpetrators discharged a firearm into the ceiling; another vaulted the counter and emptied the cash from the cash drawers. The surveillance photos showed that the individual vaulting the counter wore camouflage trousers, tennis shoes, distinctive sunglasses, and a gray sweatshirt and carried a black gym bag.
 
 
 4
 On March 27, 1992, four armed, black males, masked and wearing dark colored jumpsuits and ski masks, robbed Society Bank in Toledo, Ohio. Again, one of the perpetrators vaulted the counter and emptied cash from the teller drawers and vault. During the course of the robbery, the perpetrators used foul language, and one struck an elderly customer about the head with a pistol. The perpetrators escaped with approximately $27,000.
 
 II.
 
 5
 Both defendants appeal the admission of 404(b) evidence[1] relating to the robbery of a Kroger grocery store. Under Fed.R.Evid. 404(b), the trial court may admit evidence that a defendant used the same or a similar modus operandi in another crime he previously committed to prove his identity in the crime charged. United States v. Fountain, 2 F.3d 656, 668 (6th Cir.), cert. denied, 114 S.Ct. 608 (1993). We review for abuse of discretion "only that component of the district court's evidence ruling that invokes the balancing of the probative value of the other acts evidence against its prejudicial effect. We review the underlying admissibility of the other acts evidence under a de novo standard." Fountain, 2 F.3d at 667 (citing United States v. Gessa, 971 F.2d 1257, 1261-62 (6th Cir.1992) (en banc)).
 
 
 6
 The "other acts" evidence involved the robbery of a Kroger grocery store by three men on March 6, 1992. Two men entered the store and a third voice, heard near the entrance, urged the two inside men to hurry. During the robbery, one employee was pushed to the floor and the customers and employees were told to get on the floor. One of the perpetrators, carrying a semi-automatic pistol and using a black bag to carry the money, jumped over the counter into the office area and demanded cash.[2] The other man, guarding the employees, fired a shot into the ceiling with a revolver. Both men wore dark ski masks, jumpsuits and gloves, and two witnesses testified after viewing surveillance pictures taken during the Society Bank robbery that the dress of the robbers from the Society Bank pictures was similar to that worn by the men robbing the Kroger store.
 
 
 7
 A ballistics analysis identified the bullet recovered from the ceiling of the Kroger store as a Federal brand, .38 caliber wadcutter bullet, shot from a revolver. Lead content analysis identified it as part of the same batch of bullets as the Federal brand, .38 caliber cartridge recovered from Smith's pocket upon his arrest and the Federal brand, .38 caliber wadcutter cartridges seized from a safe Smith kept in the trunk of a car belonging to his uncle.
 
 
 8
 The government argued that the court should admit the evidence because the modus operandi was essentially the same in all of the robberies. First, it noted that the perpetrators in each of the robberies included at least three black males, wearing ski masks, gloves and dark jumpsuits. In each of the three robberies, one of the perpetrators vaulted the counter, gathered the money and had a semi-automatic pistol and another had a revolver. Also, in each of the three robberies, one of the perpetrators stood by the door and acted as timekeeper. In all three robberies, rolls of coins were taken in addition to currency, the perpetrators used foul language and told the victims to lie down on the floor. Finally, it noted that the getaway vehicles in both the Kroger and Society Bank robberies were stolen and abandoned within a mile of the crime.
 
 
 9
 Defendants contend that no inference of identity arises because the characteristics of both the Kroger robbery and the charged offense are similar to numerous other robberies committed by persons other than the defendant. See United States v. Perkins, 937 F.2d 1397 (9th Cir.1991) (holding that the characteristics of the prior and the charged offense must be distinctive, not "similar to numerous other crimes committed by persons other than the Defendant" for an inference of identity to arise) (citation omitted).
 
 
 10
 Initially, this issue was presented to the court in defendant's motion in limine. The government stated that it intended to call one of the participants in the Kroger robbery to identify defendants. The trial court, relying on United States v. Woods, 613 F.2d 629, 635 (6th Cir.) (holding that an armed robbery involving perpetrators wearing ski masks, goggles, jumpsuits, and using a stolen vehicle for a getaway car constituted an "unusual and distinctive pattern"), cert. denied, 446 U.S. 920 (1980), held that the similarities between the Kroger and bank robberies were indicative of a "signature" on the crime. On the day of trial, however, the government informed the court that its witness refused to identify the defendants. The court nevertheless ruled the evidence admissible, finding that the bullet recovered from the ceiling of the Kroger store acted as an identifier and linked defendants to the Kroger robbery. Therefore, the court concluded the evidence of the Kroger robbery was admissible to show the identity of defendants.
 
 
 11
 In Huddleston v. United States, 485 U.S. 681, 691-92 (1988), the Supreme Court articulated a framework for determining the admissibility of Rule 404(b) evidence. First, the court considers whether the evidence is being offered for a proper purpose; second, whether the evidence is relevant; and third, whether the probative value of the evidence outweighs its potential for unfair prejudice. Id. at 691. Further, the trial court should include a limited instruction as to the use of the evidence if it is requested. Id. at 691-92.
 
 
 12
 Here, the issue we must first consider is relevancy, that is the probative value of the evidence of the Kroger robbery. "[S]imilar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." Id. at 689. In Woods, the defendants were connected to the Rule 404(b) robbery by fingerprints and the confession of one of the defendants. Here, we have neither confession nor fingerprints. Rather, the connecting testimony is that given by an expert witness that the wadcutter bullet shot into the ceiling during the Kroger robbery was from the same batch of cartridges as the cartridge found in Smith's pocket at the time of his arrest. Apparently, the expert testified that anywhere between 50 and 100 boxes of cartridges could have matched the bullet shot into the ceiling during the Kroger robbery. The existence of this large number of boxes that could match the bullet thoroughly disclaims the analogy of the bullet to a fingerprint drawn by the district court.
 
 
 13
 As to defendant Gillard, the connection to the Kroger robbery absent the testimony of the accomplice is even more tenuous. Here, the only connection is a black bag--one was used in the Kroger robbery and one was found in the possession of Gillard at the time of his arrest.
 
 
 14
 Accordingly, we find that the trial court improperly admitted evidence of the Kroger robbery. Nevertheless, the conviction can be sustained if we find the error harmless. "Where an error is not of constitutional dimension, it is harmless unless it is more probable than not that the error materially affected the verdict." United States v. Martin, 897 F.2d 1368, 1372 (6th Cir.1990). We believe that the jury would have reached the same verdict based on the evidence properly admitted at trial.
 
 
 15
 At trial, James Bailey, one of the perpetrators in the Society Bank robbery, testified that Smith and Gillard were participants. This testimony alone is sufficient to render harmless the admission of evidence of the Kroger robbery, at least as to the Society Bank conviction.
 
 
 16
 In addition to Bailey's testimony, the government introduced other evidence linking Smith to the Society Bank robbery. At the time of Smith's arrest, four days after the Society Bank robbery, he was carrying three "bait bills" from that robbery. Bailey testified that one of the weapons used in the robbery was a .45 caliber semi-automatic pistol. A search warrant executed at Smith's uncle's house resulted in the discovery of ammunition including .45 caliber cartridges and Smith's fingerprints were on this box of cartridges. Further, Brenda Blalark, wife of codefendant Jesse Blalark, testified that on the morning of the Society Bank robbery, Smith met with the three codefendants at her house. Finally, the jury acquitted Smith of the Fifth Third Bank robbery, thus the admission of the evidence of the Kroger robbery in no way effected the verdict as to Counts I and II. Based on this fact, in conjunction with the overwhelming evidence presented regarding Smith's participation in the Society Bank robbery, we find that the admission of the Kroger robbery evidence is harmless error.
 
 
 17
 As to defendant Gillard, the government introduced ample evidence to support his conviction of both bank robberies. The clothing and sunglasses worn in the Fifth Third Bank robbery were connected to Gillard by an acquaintance of his. A tennis shoe taken from his residence matched the shoeprint left on the counter of the Fifth Third Bank. Clothing like that worn in the robbery as well as a black gym bag that matched the description of the one used in the Fifth Third Bank robbery were seized from Gillard's residence. Finally, Gillard was in possession of shrink wrap dimes and coinage, and although they could not be directly linked to the robbery, it is undisputed that such items were taken during the robbery.
 
 
 18
 As for the Society Bank robbery, as previously noted, Gillard was identified as a participant by Bailey, his accomplice. Thus, we find there was more than sufficient evidence to convict Gillard of both of the robberies and that the outcome was not materially affected by the erroneous admission of prior crimes evidence.[3]
 
 III.
 
 19
 Smith also argues that the evidence was insufficient to sustain his conviction for armed bank robbery and possession of a dangerous weapon during a crime of violence in violation of 18 U.S.C. Sec. 924(c). We have already discussed the sufficiency of the evidence regarding Smith's participation in the bank robberies and limit our discussion here to the evidence at trial regarding his use of a weapon.
 
 
 20
 The standard of review for claims of insufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 21
 We hold that, after viewing the evidence in the light most favorable to the government, there is sufficient evidence from which the jury could find that defendant used a weapon during the Society Bank robbery. Codefendant Bailey testified that he observed the weapon used by defendant and identified it as a .45 caliber semi-automatic pistol, obtained by Smith from his uncle's garage shortly before the robbery. Bailey testified that Smith struck a customer with the butt of his gun during the robbery. Although Smith argues that Bailey's testimony is "irrefutably impeachable," on appeal we defer to the credibility determinations made by the jury. United States v. Wynn, 987 F.2d 354, 358 (6th Cir.1993).
 
 V.
 
 22
 Accordingly, we find the evidence supports the convictions of both defendants and we AFFIRM.
 
 
 
 [1]
 Under Fed.R.Evid. 404(b): "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident...."
 
 
 [2]
 A search of Gillard's house revealed a black bag which the cashier stated looked like that bag used during the robbery of Kroger
 
 
 [3]
 Because we find the admission of the prior crimes evidence harmless error, we need not address Smith's argument that the district court's failure to make an explicit finding that the probative value of the other crimes evidence outweighed its prejudicial effect constituted error