**NOT RECOMMENDED FOR PUBLICATION**

File Name: 19a0221n.06

**No. 18-5600**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Apr 26, 2019 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) | |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| WILLIAM TIMOTHY SUTTON, | ) | DISTRICT OF KENTUCKY |
|  | ) | |
| Defendant-Appellant. | ) | |
|  | ) | |

Before: COOK, McKEAGUE, and WHITE, Circuit Judges.

HELENE N. WHITE, Circuit Judge.

A jury found Defendant-Appellant William Timothy Sutton ("Sutton") guilty on four counts of using the mail or any facility of interstate commerce in the commission of a murder-for-hire scheme in violation of 18 U.S.C. § 1958, and one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On appeal, Sutton challenges the district court's denial of his motions in limine to exclude evidence of (1) the specifics of his prior felony conviction of intimidating a participant in the legal process; (2) a prior uncharged murder-for-hire scheme; and (3) prior physical assaults by Sutton on two of the victims. Sutton also challenges the district court's denial of his request for a jury instruction on entrapment. Finding no reversible error, we AFFIRM.

**I.**

**A.**

Sutton had prior sexual relationships with both Tara Smith ("Smith") and Stephanie Broyles ("Broyles"), two of the murder targets in this case. Sutton's relationship with Smith lasted about a year, and she had a child from the relationship in 2013. Sutton's relationship with Broyles lasted from 2009 to 2012. According to Robert Hammons ("Hammons"), the county attorney for Whitley County, Kentucky, and the third murder target, Sutton, Broyles, and Smith "were always in court either as a complaining witness or as a defendant complaining about various activities among themselves" such as "harassment, terroristic threatening, [and] violation of [emergency protective orders]." (R. 103, PID 1994.) Smith's and Broyles's testimony was consistent with Hammons's, and also established numerous harassing communications with Sutton and his family, and between the two women. Sutton had four misdemeanor convictions from incidents involving Smith.

Sometime in 2015, Smith sought assistance from Hammons's office in obtaining child support from Sutton, and an attorney from Whitley County initiated a court action. In response, Sutton sent Smith social-media and text messages threatening to have Smith killed if she did not drop the action for child support. Smith brought these messages to the attention of Allen Trimble ("Trimble"), the Commonwealth Attorney for Whitley County and the fourth murder target. Trimble took the case to a grand jury, and the grand jury returned an indictment charging Sutton with the Kentucky felony of intimidating a participant in the legal process in violation of Kentucky Revised Statutes § 524.040. Sutton pled guilty to the charge and in May 2016, received a probated sentence. As part of his probation, Sutton was ordered to stay away from Smith. Following

Sutton's felony conviction, his brother convinced him to give up his guns, and Sutton brought the guns to the family's pool business, owned by the brother.

In the summer of 2016, Sutton contacted the police and reported that his coworker at the family pool business, Will Rogers ("Rogers"), offered to kill Smith for him. However, when confronted with the allegation, Rogers contended that it was Sutton who solicited him, asking him a number of times to kill both Smith and Broyles in exchange for "top dollar" payment. (*Id.* at PID 1958.) The allegations were taken to Trimble's office, but no prosecution resulted.

Sutton later failed to comply with the condition of his probation requiring that he not have contact with Smith. As a result, Sutton was taken into custody and held at the Whitley County jail.

At the jail, Sutton was held in the same cell as another inmate, John Combs ("Combs"), for four to five weeks. Combs reported to his attorney that Sutton had attempted to hire him to murder Hammons, Trimble, Smith, and Broyles. Combs's attorney passed the information to law enforcement. Law enforcement interviewed Combs, and Combs reported that Sutton asked him to kill Hammons, Trimble, Broyles, and Smith with a .308 rifle in exchange for $40,000.

Law enforcement placed a wire on Combs on two occasions to verify his allegations. The first attempt to record incriminating statements was unsuccessful. Law enforcement again wired Combs on March 6, 2017. In that second recorded conversation, Sutton initiated a discussion with Combs about murdering Hammons, Trimble, Smith, and Broyles. Three days later, law enforcement identified a letter that Sutton had sent to his brother from the county jail. In the letter, Sutton informed his brother that he had agreed to trade a rifle for a vehicle, and that a man would

come to the family business to retrieve the .308 rifle that Sutton had left there. Sutton asked his brother to wipe the gun down to clean it up and remove any fingerprints.

## B.

On June 22, 2017, a grand jury charged Sutton with four counts of violating 18 U.S.C. § 1958 by attempting to hire someone to murder Hammons, Trimble, Smith, and Broyles. The grand jury also charged Sutton with being a felon in possession of a firearm.

Before trial, Sutton filed motions in limine to exclude three categories of evidence: (1) evidence about his prior felony conviction of intimidating a participant—Smith—in the legal process of pursuing child support; (2) evidence that he had previously sought to hire Rogers to kill Smith and Broyles; and (3) evidence of his prior assaults of Smith and Broyles. The district court denied those motions, holding that the evidence was proper background evidence that was intrinsic to the conduct charged and that the evidence was probative of Sutton's intent and motive under Federal Rule of Evidence 404(b). The district court also concluded that the probative value of the evidence was not substantially outweighed by its possible unfair prejudicial effect under Federal Rule of Evidence 403.

Smith testified that when she was two months' pregnant and threatened to tell Sutton's wife about the pregnancy, Sutton threw her on the ground and kicked her in the stomach. Smith also testified to other instances of physical violence, threats, and stalking by Sutton. Smith further testified that Sutton sent her threatening messages for seeking child support from him, and that she contacted Hammons who then sought charges against Sutton. Broyles was called as a defense witness. She testified that Sutton once assaulted her and cut her throat with a small knife. Broyles

also testified that on numerous occasions Sutton stalked her and threatened to kill her. Broyles's history of making similar accusations against a number of others was explored by Sutton's counsel.

Trimble testified that after a county attorney commenced the action against Sutton for child support, Sutton sent Smith "very crude and threatening text messages telling her she'd better drop the case." (*Id.* at PID 1973.) Trimble further testified that (1) because of those threats, he sought a charge against Sutton for the felony of intimidating a participant in the legal process, (2) a grand jury returned an indictment with that charge, and (3) Sutton eventually pled guilty.

Rogers testified that he worked with Sutton at the family pool business in 2016. Rogers told the jury that Sutton often complained about how Smith and Broyles had ruined his life, and asked Rogers numerous times to murder Smith and Broyles. Rogers further testified that he tried to record some of these conversations to take them to the police, but the recordings were low quality. Rogers quit his job soon after that. Rogers testified that although Sutton called the police and claimed the murder plot was Rogers's idea, Sutton raised the idea first and on a number of occasions asked him to commit the murders.

Combs testified that he and Sutton were incarcerated together from February 2017 until the beginning of March 2017. Combs recalled that Sutton initially complained to him about Smith and Broyles, and that the conversations became more frequent and escalated to the point where Sutton asked Combs to murder Smith, Broyles, Hammons, and Trimble. Combs testified that Sutton offered to pay him $10,000 for each murder and instructed Combs on the order in which to commit the murders. Combs also testified that at the beginning of March, he informed his attorney

of the plot, spoke to law enforcement, and then wore a recording device on two occasions to record Sutton's statements about the murder for hire.

## C.

During trial, Sutton gave notice that he intended to seek a jury instruction on the entrapment defense. After hearing argument from Sutton's counsel on the jury instruction, the district court denied the request on the basis that there was insufficient evidence of entrapment, noting "this is not a case in which it was the government that got the ball rolling," and Sutton "is not a person who had the idea planted in [his] head by the government and wasn't already predisposed to potentially, according to the allegations, commit this crime." (R. 104, PID 2100-01.)

After the jury found Sutton guilty on all five counts, the district court sentenced him to 360 months' imprisonment.

## II.

Sutton first challenges the district court's denial of his motions in limine to exclude evidence of the specifics of his prior felony conviction for intimidating a participant in the legal process, the uncharged murder-for-hire proposal to Rogers in 2016, and his prior assaults of Smith and Broyles. Sutton argues that the district court admitted the evidence only as "background" evidence and not under Rule 404(b). However, the district court's ruling makes clear that it admitted the evidence as "background" evidence and also under Rule 404(b) as probative of intent and motive.

## A.

This court uses a three-step process to determine whether other-acts evidence is admissible under Rule 404(b):

> *First*, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. *Second*, if so, the district court must decide

whether the evidence of the other act is probative of a material issue other than character. *Third*, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003).

The proper standard of review of a district court's Rule 404(b) rule has been the subject of much discussion and debate in this circuit. Some courts have applied a tripartite standard of review, in which: "[w]e review for clear error the district court's factual determination that the other act occurred; we examine de novo the court's legal determination that evidence of the other act is admissible for a proper purpose; and we review for abuse of discretion the court's determination that the probative value of the evidence is not substantially outweighed by a risk of unfair prejudice." *United States v. Barnes*, 822 F.3d 914, 920-21 (6th Cir. 2016). Others have held that we review the ruling only under an abuse-of-discretion standard. *See, e.g.*, *United States v. Allen*, 619 F.3d 518, 524 n.2 (6th Cir. 2010); *United States v. Yu Qin*, 688 F.3d 257, 261 (6th Cir. 2012). Still others have determined that these two standards of review do not conflict. *See, e.g.*, *United States v. Geisen*, 612 F.3d 471, 495 (6th Cir. 2010). Both parties here apply the tripartite-review standard, and because the standard of review does not affect the result, we apply that standard as well.

**B.**

Sutton first argues that there was insufficient evidence that the prior murder-for-hire plot with Rogers actually occurred. There is sufficient evidence to admit evidence of an act if the jury could reasonably conclude that the act occurred. *United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2007). Noting that there was conflicting evidence of what had occurred and that a decision was made not to prosecute, Sutton argues that there was insufficient evidence to support admission of the allegations because "there was no way of telling what, if anything, actually occurred."

(Sutton's Br. at 23.) We disagree. The government presented Rogers's statements that Sutton approached him about murdering Smith and Broyles in exchange for money. The government also presented statements from Rogers's girlfriend that corroborated Rogers's statements. And Sutton himself called the police about the plot, although he claimed that Rogers was solely responsible. Despite the conflicting evidence, the jury could reasonably credit Rogers's testimony. The mere fact that county prosecutors did not pursue charges does not render Rogers's testimony unreliable. Even if prosecutors found insufficient evidence to pursue charges, the relevant question is whether a jury could reasonably conclude that the murder-for-hire proposal actually occurred. The evidence here far exceeds "unsubstantiated innuendo," *Huddleston v. United States*, 485 U.S. 681, 689 (1988), and a jury could reasonably conclude that Sutton attempted to hire Rogers to murder the two women.

## C.

Sutton argues that the admission of the prior-acts testimony as background evidence, or under Rule 404(b) as probative of Sutton's intent and motive, was error. "Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *Bell*, 516 F.3d at 441-42 (internal quotation marks omitted). Although Federal Rule of Evidence 404(b) bars the admission of other acts to prove a person's character, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

We agree with the district court that the evidence of Sutton's attempt to hire Rogers to kill Smith and Broyles, if believed, is relevant to the question of intent. This testimony tends to support that Sutton intended to have Combs kill the women.

Sutton contends that, at best, the prior murder-for-hire evidence was probative of his motive and intent, but the witness-intimidation conviction and prior assaults of Smith and Broyles were not probative of his intent and motive to hire Combs to murder Smith, Broyles, Hammons, and Trimble.

The witness-intimidation conviction was probative of Sutton's intent and motive. The prosecution's theory at trial was that Sutton sought the murder of Smith, Broyles, Hammons, and Trimble because he blamed them for ruining his life and causing him legal troubles. Combs testified that Sutton asserted there was a conspiracy against him and he "seemed to blame all of them for the trouble he was in." (R. 100, PID 1448.) Combs also testified that Sutton's expressed "purpose" for seeking the murder of Smith and Broyles was that "every time he would get out of jail, [Smith and Broyles] would have him put right back in." (*Id.* at PID 1533.) Rogers similarly testified that Sutton seemed to be proposing the murders-for-hire plan because Smith and Broyles were "after him" and "they're throwing him in jail for this [and] that." (R. 103, PID 1956.)

The witness-intimidation conviction thus explains Sutton's intent and motive to seek the murders. Sutton was convicted of the felony for threatening to kill Smith for pursuing child support. According to Rogers, after his felony conviction, Sutton attempted to hire Rogers to murder Smith and Broyles, faulting the women for creating his legal troubles. Sutton was later jailed due to violating the probation associated with the witness-intimidation conviction. The prosecution's theory was that, in jail, Sutton again solicited the murders of the women because he blamed the intended targets for his predicament, and he included the county attorneys for their

roles in prosecuting the witness-intimidation case as well. Under these circumstances, the facts of Sutton's prior conviction were probative of Sutton's intent and motive.[1]

**D.**

Sutton challenges the district court's conclusion that evidence of his witness-intimidation conviction and uncharged murder-for-hire plot passed the balancing test of Federal Rule of Evidence 403. A court may exclude otherwise admissible evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. Evid. 403.

The district court did not abuse its discretion in concluding that the probative value of the prior conviction and the uncharged murder-for-hire solicitation was not substantially outweighed by unfair prejudice. Although noting that the evidence was prejudicial, the court reasonably concluded that the probative value was not substantially outweighed by the possibility of unfair prejudice. The witness-intimidation conviction explained why Sutton believed Smith, Hammons, and Trimble were responsible for his troubles. The prior murder-for-hire proposal to Rogers carried significant probative value because it showed that Sutton only months earlier had attempted to hire someone to murder Smith and Broyles. *See United States v. Wynn*, 987 F.2d 354, 357 (6th Cir. 1993).

Sutton contends that the evidence served only to prejudice the jury against him because the government could have relied on other evidence, specifically his recorded conversations with Combs and the letter he sent his brother. However, Sutton argued at trial that he lacked the necessary intent in his conversations with Combs, characterizing the statements as "jailhouse talk."

---

[1] Because we conclude that the specifics of the witness-intimidation conviction were properly admissible as probative of Sutton's motive and intent, we need not address whether the evidence was properly admitted as background evidence.

(R. 100, PID 1344.) Thus, the witness-intimidation conviction and prior murder-for-hire offer were additional evidence establishing, and explaining to the jury, Sutton's motive and intent to have the four persons murdered. The district court further limited the possible prejudice by instructing the jury that it could consider the bad-acts evidence only as it tended to prove intent or motive. *See Wynn*, 987 F.2d at 357. The evidence was prejudicial, but not unfairly so.

## E.

Finally, Sutton challenges the admission of the evidence of his prior assaults of Smith and Broyles, contending that the evidence was neither admissible background evidence nor probative of his intent or motive, and that the evidence failed the Rule 403 balancing test. However, even if that evidence was improperly admitted, it amounted to harmless error because the other evidence of guilt—including Combs's testimony, the recorded conversation between Combs and Sutton, Sutton's letter to his brother, and Rogers's testimony of the prior murder-for-hire proposal—was overwhelming. *See United States v. Hardy*, 643 F.3d 143, 153-54 (6th Cir. 2011). We further note that Sutton called Broyles as a witness after the government decided not to, and elicited the testimony he now challenges.

## III.

Sutton next claims error in the district court's denial of his request to give a jury instruction on entrapment. "[W]e review a district court's denial of a requested jury instruction for abuse of discretion." *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010). There is no abuse of discretion "if the jury instructions as a whole . . . adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *Id.* (internal quotation marks omitted). "A district court's refusal to deliver a requested instruction is reversible only if that instruction is (1) a correct statement of the law, (2) not substantially covered by the

charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991).

To establish entrapment, a defendant must establish two related elements: "(1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity." *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002). "A defendant is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment, but the defendant must provide enough evidence to support both elements of entrapment in order to receive the instruction." *United States v. Demmler*, 655 F.3d 451, 456-57 (6th Cir. 2011) (internal citation and quotation marks omitted).

Government inducement is "something more than merely affording an opportunity or facilities for the commission of the crime." *United States v. Poulsen*, 655 F.3d 492, 502 (6th Cir. 2011) (internal quotation marks omitted). Government inducement "requires 'an opportunity *plus* something else—typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive.'" *United States v. Wilson*, 653 F. App'x 433, 439 (6th Cir. 2016) (quoting *United States v. Dixon*, 396 F. App'x 183, 186 (6th Cir. 2010)). In addition, "[i]nducement requires 'evidence of 'repeated and persistent solicitation,' or 'excessive pressure by the government.'" *United States v. Geralt*, 682 F. App'x 394, 406 (6th Cir. 2017) (quoting *Dixon*, 396 F. App'x at 186 and *Wilson*, 653 F. App'x at 439). We consider the following factors to determine a defendant's predisposition: "[1] the character or reputation of the defendant, including any prior criminal record; [2] whether the suggestion of the criminal activity was initially made by the Government; [3] whether the defendant was engaged in the criminal activity for profit; [4] whether the defendant evidenced reluctance to commit the

offense, overcome only by repeated Government inducement or persuasion; and [5] the nature of the inducement or persuasion supplied by the government." *Khalil*, 279 F.3d at 365. "Where the evidence clearly and unequivocally establishes that [the defendant] was predisposed, the district court is justified in denying an entrapment instruction." *Id.* (internal quotation marks omitted).

The district court did not abuse its discretion in rejecting Sutton's request for a jury instruction on entrapment. The district court concluded that there was insufficient evidence of inducement, finding that "this is not a case in which the government came in the very first instance to the defendant. [O]nce they got word that the allegations that were being made, they, of course, developed a cooperator." (R. 104, PID 2100.) Sutton relies on the following evidence to establish inducement: (1) his statements in an interview with law enforcement that Combs offered to "take care" of Sutton's "problem" but Sutton rebuffed his offer (R. 102, PID 1786); (2) his statements to law enforcement that killing Hammons and Trimble was Combs's idea; (3) an investigating officer's admission that he had an "agenda" to get Sutton's incriminating plot on tape (R. 100, PID 1420); and (4) Combs's attempts to direct the recorded conversation with Sutton toward the murder-for-hire plot. However, this is insufficient evidence of government inducement. Sutton's first assertion is more appropriately addressed to his guilt or innocence. If the jury believed that the murders were not his idea and that he did not agree to the plot, the jury would have found him not guilty. Even accepting Sutton's second assertion that killing the prosecutors was originally Combs's idea, that does not amount to entrapment without some showing of pressure or persuasion. Similarly, the fact that the government sought to substantiate Combs's allegations in a recording does mean it induced Sutton to pay Combs to murder the four targets. *Poulsen*, 655 F.3d at 502. And, although Combs may have redirected the conversation toward the murder-

for-hire plot, that too does not amount to entrapment. In sum, the evidence Sutton relies on does not tend to show excessive pressure or repeated and persistent solicitation by the government.

A jury also could not reasonably conclude that Sutton was not predisposed to commit the murder-for-hire offenses he was charged with. To show he was not predisposed to have Hammons and Trimble murdered, Sutton again relies on (1) his statement to law enforcement that targeting Hammons and Trimble was originally Combs's idea and (2) Combs's efforts to redirect the second recorded conversation toward the plot. Even crediting Sutton's statements to police that he initially did not intend to kill the prosecutors and it was originally Combs's idea, Sutton cites to no evidence that he sought the murder of Hammons and Trimble only after repeated government inducement or persuasion.

Sutton also relies on testimony from another inmate in the same cell as Combs and Sutton that he never heard Sutton mention the prosecutors but heard Combs offer to take care of Sutton's problems. Even accepting the inmate's testimony, the inmate conceded at trial that he was not in the cell with Sutton and Combs for the last week of February and the first week of March. Combs testified, however, that he became convinced that Sutton was serious about the plot at the beginning of March.

Because Sutton failed to present sufficient evidence of entrapment, the district court did not abuse its discretion in denying Sutton's request for a jury instruction on entrapment.

## IV.

We find no reversible error in the district court's decisions to (1) deny Sutton's motions in limine to exclude evidence of his witness-intimidation conviction, prior uncharged murder-for-hire plot, and assaults of Smith and Broyles and (2) deny Sutton's request for an entrapment instruction. Accordingly, we AFFIRM.