FILED
**United States Court of Appeals**
**Tenth Circuit**

**December 23, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSEPH MALDONADO-PASSAGE,
a/k/a Joseph Allen Maldonado, a/k/a
Joseph Allen Schreibvogel, a/k/a Joe
Exotic,

    Defendant - Appellant.

No. 22-6025

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:18-CR-00227-SLP-1)**

_____

Molly Hiland Parmer, Parmer Law, Atlanta, Georgia, for Defendant – Appellant.

Steven W. Creager, Assistant United States Attorney (Robert J. Troester, United States
Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff – Appellee.

_____

Before **McHUGH**, **BALDOCK**, and **MURPHY**, Circuit Judges.

_____

**MURPHY**, Circuit Judge.

_____

## I.    INTRODUCTION

In 2018, Joseph "Tiger King" Maldonado-Passage was indicted on several counts,

including two murder-for-hire schemes in violation of 18 U.S.C. § 1958(a). A jury

convicted Maldonado-Passage on all counts presented and the district court sentenced

him to a 264-month term of imprisonment. The sentence incorporated consecutively run 108-month terms for each § 1958(a) conviction. He appealed to this court, claiming, *inter alia*, his murder-for-hire counts should be grouped for purposes of calculating his total offense level. This court affirmed Maldonado-Passage's murder-for-hire convictions, but held his § 1958(a) offenses shared a "common criminal objective" and should be grouped under § 3D1.2(b) of the United States Sentencing Guidelines. *United States v. Maldonado-Passage* (*Maldonado-Passage I*), 4 F.4th 1097, 1099; 1104–08 (10th Cir. 2021). We remanded the matter to the district court for resentencing. *Id.* at 1108 ("For the foregoing reasons, we affirm Maldonado-Passage's conviction[s] but vacate the sentence and remand for resentencing.").

On remand, Maldonado-Passage filed a motion to reconsider the denial of a pretrial motion to dismiss one of the two § 1958(a) counts as multiplicitous. He proposed his counts be merged and subject to a single penalty. In its denial of the motion, the district court concluded Maldonado-Passage failed to demonstrate adequate grounds for reconsideration. Furthermore, during resentencing, the district court announced it would not exercise its discretion to expand the scope of sentencing beyond the grouping error identified by this court in *Maldonado-Passage I*. The district court revised Maldonado-Passages' total offense level and advisory Guidelines sentencing range and accordingly imposed a reduced sentence of 252 months' imprisonment. This sentence included two consecutively run 102-month terms for each murder-for-hire conviction.

Maldonado-Passage brings this appeal claiming the text of § 1958(a) prohibits his conduct from being parsed into two offenses with consecutively run sentences. This court

2

disagrees. As a threshold matter, the district court did not abuse its discretion by limiting its sentencing scope and refusing to reconsider Maldonado-Passage's previously denied motion to dismiss for multiplicity. Therefore, no vehicle to challenge the § 1958(a) components of his sentence as multiplicitous remains. Nonetheless, this court also confirms § 1958(a)'s "plot centric" unit of prosecution permits separate offenses and consecutive sentences when, as here, two unrelated hitmen are hired to kill the same person. *See United States v. Gordon*, 875 F.3d 26, 35 (1st Cir. 2017). Thus, exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), this court **affirms** the district court's sentencing decision.

## II.    BACKGROUND

Maldonado-Passage's murder-for-hire attempts were born from a bitter feud with activist Carole Baskin over his treatment of animals at the zoo he operated in Wynnewood, Oklahoma. The pair's colorful rivalry featured famously in Netflix's 2020 documentary series, *Tiger King: Murder, Mayhem, and Madness*. The impetus of Maldonado-Passage and Baskin's enmity is detailed by this court's prior decision in *Maldonado-Passage I* and need not be recapitulated in full. *See Maldonado-Passage I*, 4 F.4th at 1099–1100.

Most relevant to this appeal is the posture of Maldonado-Passage's § 1958(a) convictions. The first count of the indictment describes Maldonado-Passage's arrangements with zoo employee Alan Glover. Throughout November 2017, Maldonado-Passage solicited Glover to kill Baskin; organized Glover's interstate travel to obtain a fake identification card; provided Glover with a new phone preloaded with pictures of

Baskin; and forwarded approximately $3000 to Glover for his travel to Florida to murder Baskin. *Id*. at 1100. At the end of November, Glover traveled from Oklahoma to Florida, but did not contact or attempt to kill Baskin. *Id*. Maldonado-Passage's second § 1958(a) count articulates his agreement with an undercover FBI agent, "Mark," to kill Baskin. *Id*. Introduced by a friend who was cooperating with an ongoing federal investigation, Maldonado-Passage and Mark engaged in several phone conversations from December 2017 to March 2018 regarding Baskin's murder. Maldonado-Passage ultimately offered to pay Mark $10,000 in two installments for Baskin's murder.

Prior to his initial trial, Maldonado-Passage filed a motion to dismiss one of the two § 1958(a) counts for multiplicity. He argued the two counts covered "the same criminal behavior" and could not be distinguished. Further, he characterized the unit of prosecution under § 1958(a) as "a single plot to murder a single individual." *See Gordon*, 875 F.3d at 28. Maldonado-Passage described his arrangements with Glover and Mark as one cohesive plot to murder Baskin which could not be separated as a matter of statutory interpretation. The district court denied Maldonado-Passage's motion, concluding his § 1958(a) convictions were entirely distinct. According to the district court, the presence of a shared victim did "not alter the alleged plots' individual natures." After conviction, Maldonado-Passage was sentenced to two consecutive 108-month terms for each murder-for-hire count.

Maldonado-Passage did not challenge on appeal the district court's conclusion that the indictment set out two, distinct crimes. He did, however, claim that the district court erred in failing to group the two murder-for-hire convictions for purposes of calculating

his total offense level. *Maldonado-Passage I*, 4 F.4th at 1103. We affirmed Maldonado-Passage's murder-for-hire convictions against a challenge to the district court's refusal to sequester a witness, but held that the district court erred when it failed to group the convictions pursuant to § 3D1.2(b) of the Guidelines. *Id*. at 1099. This court concluded the two schemes involved "'substantially the same harm'" because they were "connected by a 'common criminal objective'" and charged in "closely related counts." *Id*. at 1104 (quoting U.S.S.G. § 3D1.2(b)). Our interpretation of the Guidelines emphasized that the ends, rather than the means, of a planned murder dictate whether more than one act should be grouped under a common criminal objective. *Id*. at 1105–06. Relying on *United States v. Norman*, 951 F.2d 1182 (10th Cir. 1991), this court determined the shared goal between the two counts required grouping for sentencing determination. *Maldonado-Passage I*, 4 F.4th at 1106. Accordingly, the case was remanded for resentencing under a lowered total offense level. *Id*. at 1108.

On remand, Maldonado-Passage filed a motion to reconsider the denial of his pretrial motion to dismiss one of the two murder-for-hire counts as multiplicitous. He offered the grouping decision in *Maldonado-Passage I* as support for his argument that the two convictions should be merged and subject to a single penalty. The district court rejected this theory. It first questioned whether timeliness and the mandate of this court allowed for such reconsideration. Even without these initial concerns, the district court determined Maldonado-Passage had not demonstrated a misapprehension of the law or facts required to show adequate grounds for reconsideration. At the subsequent resentencing hearing, the district court treated this court's remand in *Maldonado-Passage*

5

*I* as limited to resentencing. The district court, however, declined to expand the scope of sentencing beyond the more limited grouping issue. The district court adopted its prior sentencing findings except for sentencing calculations necessitated by the grouping mandate. Maldonado-Passage was resentenced to 252 months' imprisonment, 204 of which were evenly divided into consecutive sentences for his § 1958(a) convictions.

## III.   ANALYSIS

This appeal offers two procedural and two substantive issues for review. Procedurally, the case requires analysis of the district court's denial of Maldonado-Passage's motion to reconsider and its limitation of resentencing to align with this court's mandate in *Maldonado-Passage I*. Substantively, Maldonado-Passage argues his § 1958(a) sentences are based on multiplicitous convictions and those convictions should be merged into one. He also argues the district court's decision to run his murder-for-hire sentences consecutively is unreasonable. We conclude the district court did not abuse its discretion on either procedural issue and, therefore, properly did not address anew the substantive issue of multiplicity. Even if Maldonado-Passage were to prevail on these procedural issues, however, his arguments regarding multiplicity and reasonableness would still fail. Maldonado-Passage's § 1958(a) convictions are not multiplicitous because they involve distinct plots to kill a single person. Further, the record does not indicate the district court erred in its calculation or imposition of consecutive sentences.

### a.   RECONSIDERATION

This court reviews denials of motions to reconsider for abuse of discretion. *See United States v. Warren*, 22 F.4th 917, 927 (10th Cir. 2022). Abuse of discretion requires

"arbitrary, capricious, whimsical or manifestly unreasonable judgment." *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 981 (10th Cir. 2012) (quotation omitted). Grounds for reconsideration include changes in controlling law; new, previously unavailable evidence; and clear error or manifest injustice. *See United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). Motions for reconsideration should not be used as a means of revisiting issues or arguments already addressed. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

Maldonado-Passage's motion to reconsider his prior motion to dismiss for multiplicity reiterated his central argument that prosecution under § 1958(a) should be characterized by number of victims, not number of hitmen used.[1] The district court did not abuse its discretion in denying his motion to reconsider. No evidence indicates the district court misapprehended the facts, law, or Maldonado-Passage's position as required for reconsideration. *See Christy*, 739 F.3d at 539. Maldonado-Passage failed to introduce any new facts to support reconsideration. His motion to reconsider largely restated the argument offered in his motion to dismiss, supported by the same legal authority. The decision in *Maldonado-Passage I* does not alter this analysis. There, this court remanded

---

[1] Maldonado-Passage cites *United States v. Wynn*, 987 F.2d 354 (6th Cir. 1993), to support the contention that multiple § 1958(a) counts directed at one victim cannot be sentenced consecutively. *Wynn* notes: "[S]eparate phone calls which are violations of 18 U.S.C. § 1958 must be grouped together . . . if they are connected with the murder of one individual. So too, separate phone calls which relate to one plan to murder one individual constitute only one violation of 18 U.S.C. § 1958." *Id*. at 359. As noted *infra* § III.c, *Wynn* is distinguishable from the case at hand because there the Government pursued a unit of prosecution based on the number of interstate phone calls rather than the number of independent hitmen hired.

only for resentencing under § 3D1.2(b), while leaving Maldonado-Passage's convictions

intact. *See Maldonado-Passage I*, 4 F.4th at 1103. Accordingly, *Maldonado-Passage I*

provided no intervening change in law, nor did it demonstrate grounds for clear error

warranting reconsideration. Thus, the district court did not err in refusing to reconsider at

resentencing the merits of Maldonado-Passage's multiplicity arguments.

### b.  MANDATE

The mandate rule is a discretion guiding principle which requires a trial court to

conform with the appellate court's terms of remand. *See Dish Network Corp. v.

Arrowood Indem. Co.*, 772 F.3d 856, 864 (10th Cir. 2014); *United States v. Shipp*, 644

F.3d 1126, 1129 (10th Cir. 2011). This court evaluates whether district courts abuse any

measure of discretion left by an appellate mandate. *See Procter & Gamble Co. v.

Haugen*, 317 F.3d 1121, 1125 (10th Cir. 2003). Unless an appellate mandate expressly

limits discretion, the district court may determine what may be heard on remand. *See

United States v. Walker*, 918 F.3d 1134, 1144 (10th Cir. 2019). Accordingly, a district

court may expand the scope of resentencing absent an express limitation but is not

required to do so. *See United States v. West*, 646 F.3d 745, 749 (10th Cir. 2011).

Preliminarily, Maldonado-Passage suggests the § 3D1.2(b) grouping analysis in

*Maldonado-Passage I* indicates imposing two separate sentences for his actions would be

unconstitutional. In so arguing, he confuses the role of grouping in the sentencing

process. Grouping under § 3D1.2(b) of the Sentencing Guidelines plays an important role

in determining offense level but does not sequentially impact subsequent sentencing

decisions once total punishment is set. *See United States v. Garcia-Torres*, 341 F.3d 61,

8

75–76 (1st Cir. 2003). With limited exception,[2] whether counts are grouped does not bear on the ability of a district court to run sentences consecutively or concurrently. To the contrary, district courts are given broad discretion to issue consecutive sentences despite § 3D1.2(b) grouping requirements. *See e.g.*, *United States v. Jabateh*, 974 F.3d 281, 305 (3d Cir. 2020) ("While the Guidelines advise that '[a]ll counts involving substantially the same harm shall be grouped together,' U.S.S.G. § 3D1.2, they readily acknowledge a district court's authority to impose concurrent or consecutive sentences, U.S.S.G. §§ 5G1.2(d), 5G1.3(b)."); *see also United States v. Dvorak*, 617 F.3d 1017, 1029 (8th Cir. 2010); *United States v. Bonilla*, 579 F.3d 1233, 1244–45 (11th Cir. 2009); *United States v. Gigley*, 213 F.3d 503, 506 (10th Cir. 2000). Accordingly, Maldonado-Passage misconstrues the "common criminal objective" analysis of § 3D1.2(b) and the mandate in *Maldonado-Passage I* as suggesting his sentences were multiplicitous.

In *Maldonado-Passage I* we issued the following remand: "For the foregoing reasons, we affirm Maldonado-Passage's conviction[s] but vacate the sentence and remand for resentencing." *Maldonado-Passage I*, 4 F.4th at 1108. In accordance with prior decisions of this circuit, the district court appropriately treated the mandate of this court in *Maldonado-Passage I* as limited to resentencing, but general as to the scope of resentencing proceedings. *See e.g.*, *Walker*, 918 F.3d at 1143–44. Contrary to Maldonado-Passage's request, the district court declined to use its discretion to expand its

---

[2] *See e.g.,* U.S.S.G. § 5G1.2 cmt. n. 2(B)(ii) (expressly including "[w]hether the underlying offenses are groupable under § 3D1.2" as a factor to consider when determining whether multiple 18 U.S.C. § 1028A convictions should be run consecutively or concurrently).

resentencing review beyond the grouping question expressly outlined by our prior remand. This court concludes the district court did not abuse its discretion by so limiting its review within resentencing to issues related to Guidelines recalculation. *See id.*; *see also Haugen*, 317 F.3d at 1125; *West*, 646 F.3d at 749. Restricting the scope of the decision to the narrow set of issues outlined in *Maldonado-Passage I* is not arbitrary or manifestly unreasonable and therefore not an abuse of discretion.

On appeal, Maldonado-Passage attempts to request relief that falls within the bounds of the district court's resentencing review. He asks this court to remand this case to the district court to merge the two counts and resentence him on the remaining count. Such a remedy is not available here. This court has consistently held the only available relief for multiplicitous convictions is for the district court to use its discretion to vacate one of the underlying convictions. *See e.g.*, *United States v. Frierson*, 698 F.3d 1267, 1269 (10th Cir. 2012); *United States v. Barrett*, 496 F.3d 1079, 1095 (10th Cir. 2007); *United States v. Moore*, 958 F.2d 310, 314 (10th Cir. 1992). In *Maldonado-Passage I*, we already affirmed Maldonado-Passage's convictions. To now merge his counts or run his sentences concurrently would effectively overrule this court's earlier affirmance of his convictions. The relief he proposes, therefore, falls outside the breadth of this court's prior mandate to address resentencing.

### c. UNIT OF PROSECUTION

Even if Maldonado-Passage prevailed on the procedural grounds discussed above, his multiplicity claim fails. His primary argument in this appeal is that § 1958(a) does not allow his murder-for-hire counts to be separated into two violations with consecutive

10

sentences. Maldonado-Passage contends he is being punished twice for the same crime: his plot to kill Baskin. *See* U.S. CONST. amend. V. He urges this court to adopt a unit of prosecution under § 1958(a) based on an "overarching" plot to kill one person, thereby requiring his two sentences be merged into one. This court is not persuaded by these arguments. Section 1958(a) substantively allows for separate offenses and consecutive sentences in this case.

The Double Jeopardy Clause protects a person from receiving multiple punishments for the same offense. *See United States v. Jackson*, 736 F.3d 953, 955 (10th Cir. 2013) ("The Double Jeopardy Clause of the Fifth Amendment protects a person from being 'twice put in jeopardy of life or limb.' U.S. CONST. amend. V. Included in double jeopardy protections are multiple punishments for the same offense based on the total punishment authorized by the legislature."). "If the same statutory violation is charged twice, the question is whether the facts underlying each count were intended by Congress to constitute separate units of prosecution." *United States v. Elliott*, 937 F.3d 1310, 1313 (10th Cir. 2019) (quotations omitted). The relevant unit of prosecution means the "minimum amount of activity for which criminal liability attaches" for any charge under an applicable criminal statute. *United States v. Rentz*, 777 F.3d 1105, 1108 (10th Cir. 2015) (quotation omitted). Determining the unit of prosecution is generally a matter of statutory interpretation. *See Elliott*, 937 F.3d at 1313. Where "grievous ambiguity" exists, courts are urged against turning a single transaction into several offenses. *See id.*; *see also Muscarello v. United States*, 524 U.S. 125, 139 (1998).

The substantive language of § 1958(a) reads as follows:

11

(a) Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years, or both; and if death results, shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both.

Both counts against Maldonado-Passage involve the use of interstate facilities accompanied by the offer of money for murder of another. Count one included several instances of Maldonado-Passage sponsoring travel across state lines. Count two featured multiple telephone calls aimed at facilitating the murder.[3] The question in this case, however, is not whether use of interstate facilities occurred, but whether a single victim unites the actions as one offense under the statute. The tension between the facility-based and plot-based language in § 1958(a) complicates the statute's unit of prosecution analysis.

In *United States v. Gordon*, the First Circuit grappled with the difficulty posed by § 1958(a)'s language: "Those words can be read . . . to criminalize each act of travel or each use of the facilities of interstate commerce in service of a murder-for-hire scheme. But those words also can be read . . . to criminalize each plot or scheme to murder an individual." 875 F.3d at 33. Gordon was charged with five counts of violating § 1958(a):

---

[3] Telephone calls have regularly been found to constitute violations of § 1958(a). *See e.g.*, *Gordon*, 875 F.3d at 28; *Wynn*, 987 F.2d at 355. Maldonado-Passage does not dispute the interstate nature of either count he faces.

three telephone calls and two letters sent to an undercover agent posing as a hitman. *Id*. at 29. The First Circuit emphasized the graduated sentencing scheme included in § 1958(a) conveyed a "clear indication of Congress's apparent belief that the greater the harm to the victim, the harsher the punishment should be for the offender." *Id*. at 33. The First Circuit further challenged the unit of prosecution offered by the Government, positing that counts based on the number of interstate communications does not align with the harm-centered congressional intent. *Id*. Indeed, such a scheme would expose a person who made ten soliciting phone calls without success to higher criminal liability than a person who made one which resulted in personal injury. *Id*. Given this reasoning, the First Circuit necessarily concluded both interpretations of § 1958(a)'s unit of prosecution—facility-based and plot-based—were linguistically plausible, but Congress could have only intended the plot-centric one. *Id*. at 34–35. The First Circuit ordered the counts be merged into a single count and resentenced accordingly. *Id*. at 38.

The only other circuit to have weighed in on the issue has also upheld the plot-centric interpretation of § 1958(a)'s unit of prosecution. In *United States v. Wynn*, the Sixth Circuit held "separate phone calls which relate to one plan to murder one individual constitute only one violation of 18 U.S.C. §1958." 987 F.2d at 359; *see also United States v. Danforth*, 471 F. Supp. 3d 1079, 1084 (D. Idaho 2020) (holding § 1958(a) to be ambiguous and applying the rule of lenity to merge multiple counts based on telephone

calls). This construction implies each plot to murder an individual should be confined to a single § 1958(a) charge.[4]

This court agrees with the plot-centric unit of prosecution adopted by the First and Sixth Circuits in *Gordon* and *Wynn*. The core congressional intent of § 1958(a) is to limit harm to a targeted individual. The victim-based sentencing scheme, which imposes punishment contingent on the outcome of the plot, focuses on the resulting harm from conduct rather than the means taken to achieve it. *See Gordon*, 875 F.3d at 33. As the First Circuit in *Gordon* notes, congressional reports accompanying § 1958(a) emphasize, "[t]he focal point of [§ 1958(a)] was a murder plot that had a federal nexus, not the federal nexus itself." *Id*. at 34. Section 1958(a) aimed to build upon existing state murder solicitation laws by applying interstate facilities as a federal hook. Accordingly, where an individual has made multiple interstate communications associated with the intended murder of one individual, there may be but one offense under § 1958(a).[5]

---

[4] Maldonado-Passage argues the possibility of two units of prosecution, plot-based and facility based, gives rise to ambiguity warranting the rule of lenity. The rule of lenity, "a rule of last resort," requires courts resolve against the harsher of two punishments where ambiguity exists "after traditional means of interpreting the statute have been exhausted." *See United States v. Wilson*, 10 F.3d 734, 736 (10th Cir. 1993). It is manifestly clear that Congress intended § 1958(a) to utilize a plot-centric unit of prosecution. Without such ambiguity the rule of lenity does not apply. *See United States v. Metzener*, 584 F.3d 928, 935 (10th Cir. 2009). Additionally and independently, as applied to the facts of this case, no ambiguity exists in the record as to the presence of two independent plots to murder Baskin.

[5] This principle does not apply for the hiring of *one* person to kill *multiple different* people. That scenario results in multiple separate plots. *See e.g.*, *Hinkson v. Gomez*, No. 18-5833, 2019 WL 461495, at *2 (6th Cir. Jan. 9, 2019) (holding a plot to murder three different individuals is divisible into separate counts).

Although we adopt the plot-centric unit of prosecution for § 1958(a), the facts of this case lead to a different outcome than *Gordon* and *Wynn*. Whereas both the First and Sixth Circuits confronted a single plot effected through multiple interstate communications, here there are as many plots as there are hitmen. The record indicates Maldonado-Passage's contacts with his anticipated hitmen were entirely distinct. Although they shared a common target, evidence indicates the hitmen shared little else. Glover and Mark never communicated or worked together; they received different instructions at different times; and they had entirely separate rewards. Thus, the two hitmen represented two independently operating plots to kill Baskin. Under the plot-centric interpretation of § 1958(a), it is appropriate for the schemes to be punished separately.

Maldonado-Passage's conduct put in context with Congress's harm-based intent for § 1958(a) further clarifies the unit of prosecution analysis. Unlike multiple phone calls to a single hitman, hiring separate hitmen to kill one person demonstrably increases the chance of harm to that individual. Two hitmen pursuing their reward doubles an individual's risk. An additional interstate phone call to a hitman clarifying the details of an existing plan, however, does not necessarily do the same. Accepting a harm-centered unit of prosecution requires that criminal liability attach where independent sources of harm are identified. Two unrelated hitmen are separate sources of harm.

The unit of prosecution proposed by Maldonado-Passage would have consequences at odds with the statutory purpose. Under his theory of an "over-arching plot to kill a single person" interpretation of § 1958(a), an individual could independently

15

hire several hitmen to kill a single person and be charged the same as someone who makes one phone call to solicit the murder of another. The first individual could amass a cavalry of independently operating killers to terrorize the intended victim without fear of being charged with multiple counts under § 1958(a). Similarly, Maldonado-Passage's interpretation would also forbid multiple charges where an individual orchestrates separate murder-for-hire schemes on the same target years apart. Congressional intent behind § 1958(a) certainly aimed to treat separate murderous solicitations distinctly, even if there is but one intended victim.

### d. REASONABLENESS

Maldonado-Passage's final argument requests this court to reverse the district court's resentencing decision as procedurally or substantively unreasonable. Review of sentencing reasonableness is a two-step process: first, this court ensures the district court did not err procedurally and, if not, analyzes the substantive reasonableness of the sentence. *See United States v. Sanchez-Leon*, 764 F.3d 1248, 1261 (10th Cir. 2014). Review for procedural reasonableness analyzes the method of sentence calculation, including whether the advisory Guidelines range was proper, whether § 3553(a) sentencing factors were correctly considered, and whether the sentencing decision relied on clearly erroneous facts. *See Gall v. United States*, 552 U.S. 38, 51 (2007). When reviewing a district court's sentence, this court "review[s] the procedural reasonableness of [the] defendant's sentence using the familiar abuse-of-discretion standard of review, under which we review de novo the district court's legal conclusions regarding the Guidelines and review its factual findings for clear error." *Sanchez-Leon*, 764 F.3d at

16

1262 (quotations omitted). Substantive unreasonableness occurs when the court imposes a sentence that does not fairly reflect the relevant sentencing factors or circumstances of the defendant. *See United States v. Gross*, 44 F.4th 1298, 1303 (10th Cir. 2022). That is, substantive error most directly implicates the length of the sentence. *See United States v. Smart*, 518 F.3d 800, 803 (10th Cir. 2008). This court reviews the substantive reasonableness of a district court's sentence for abuse of discretion, giving substantial deference to the district court's application of § 3553(a) factors to the facts of the case. *See United States v. Barnes*, 890 F.3d 910, 915 (10th Cir. 2018); *Sanchez-Leon*, 764 F.3d at 1267.

Maldonado-Passage has failed to demonstrate any procedural or substantive error in the district court's revised sentence. Procedurally, the district court did not miscalculate the Guidelines range or base its sentence on clearly erroneous findings. Moreover, the district court thoroughly addressed the § 3553(a) sentencing factors and ancillary issues such as Maldonado-Passage's health and the government's investigatory conduct.[6] Substantively, the sentence imposed fell within the parameters of the advisory Guidelines range and is, therefore, entitled to a presumption of reasonableness. *United States v. Woody*, 45 F.4th 1166, 1180 (10th Cir. 2022). Maldonado-Passage has failed to rebut this presumption. The record demonstrates the district court appropriately followed the input of the § 3553(a) sentencing factors and, in doing so, considered all the mitigating aspects advanced by Maldonado-Passage (i.e., his ill health, lack of a previous

---

[6] Contrary to Mr. Maldonado-Passage's argument, the district court adequately explained its reasoning for imposing consecutive sentences by relying on U.S.S.G. § 5G1.2.

17

criminal record, service as a police officer, etc.). Maldonado-Passage also offered instances in which other defendants convicted under § 1958(a) received lesser sentences. This court is reluctant, however, to overturn an otherwise proper sentencing decision based on a list of cases selected by counsel with different facts and circumstances. *See United States v. Franklin*, 785 F.3d 1365, 1372 (10th Cir. 2015). As a consequence, the record does not support a finding of error or an abuse of discretion by the district court in its resentencing decision. Maldonado-Passage did not carry the heavy burden required to overcome the substantial deference afforded the district court in this matter.

## IV.    CONCLUSION

For those reasons set out above, the sentence entered by the United States District Court for the Western District of Oklahoma is hereby **affirmed**.