FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 1, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DARNELL FOLEY,

    Defendant - Appellant.

No. 22-1020
(D.C. No. 1:19-CR-00447-RM-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **HARTZ**, **TYMKOVICH**, and **MATHESON**, Circuit Judges.
_____

Darnell Foley pleaded guilty to one count of possession of ammunition by a prohibited person. The United States District Court for the District of Colorado varied upward from the Sentencing Guidelines range of 63–78 months and sentenced Mr. Foley to 90 months' imprisonment. He appeals. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

---

    * After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

Video surveillance cameras captured most of the events leading to Mr. Foley's conviction and sentence.  In August 2019, Mr. Foley was standing with two friends outside a minivan parked in front of a Denver convenience store and gas station.  About 1:30 a.m., a man entered the store.  As he was leaving, he passed Mr. Foley, who then reached through the van's side door, removed a rifle, and followed the man out of view of the camera.  The two reappear in the video footage one or two seconds later, wrestling for the rifle, a struggle that lasted several minutes and moved around the grounds of the gas station and into parts of the convenience store.  The man eventually obtained possession of the gun, and Mr. Foley fled.

During the struggle the gun discharged.  Police officers recovered a large-capacity magazine with 23 rounds in it and two of the same type of rounds on the ground, one inside the store and one outside.  The gun was not recovered.

An indictment charged Mr. Foley, who had five prior felony convictions, with one count of possession of ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1).  He pleaded guilty to the charge without a plea agreement.  At sentencing, the district court adopted the factual findings of the Presentence Investigation Report (PSR), to which Mr. Foley had not objected, and supplemented them with its own observations of the video evidence.  The court, however, disagreed with the PSR's analysis in one respect; it held that the felony offense for which he was convicted in 2000 was not a crime of violence under the categorical approach, so his base offense level should be 22 under § 2K2.1(a)(3), rather than 26 under

2

§ 2K2.1(a)(1), of the 2021 United States Guidelines Manual.  Mr. Foley's total offense level was 19, resulting in an advisory Guidelines imprisonment range of 63 to 78 months.

After hearing sentencing requests from both sides and Mr. Foley's statement, the district court explained that its sentence was based on consideration of all the 18 U.S.C. § 3553 factors.  The court determined that a within-Guidelines sentence would be too low because Mr. Foley, despite the prohibition on convicted felons possessing guns, had brought a loaded, semiautomatic rifle with a large-capacity magazine to the convenience store, and the "struggle [was] the result of [Mr. Foley's] conduct, bringing the gun, taking it out of the [van] and approaching [the other man] with the gun."  R., Vol. 5 at 191:23–25.  The court found that the other man had not "attack[ed]" Mr. Foley and did not "have a gun or anything else."  *Id.* at 191:16-17.  In addition, the court observed, at least one shot was fired.  The court also noted that the store was just in front of an apartment building on a major street near a highway intersection, and even though it was around 1:30 a.m., someone could easily have been killed.  The court further relied on the similarity between the conduct underlying Mr. Foley's instant offense and that underlying his 2000 felony conviction for first-degree assault in the heat of passion, where he had wrestled with someone in a backyard over a gun and the other person had gotten shot twice in the back or buttocks.  For these reasons, the court found an upward variance was warranted and imposed a sentence of 90 months.

## II.    DISCUSSION

### A.    Standard of review

"[W]e review sentences for reasonableness under a deferential abuse-of-discretion standard." *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1214 (10th Cir. 2008). "Reasonableness review is a two-step process comprising a procedural and a substantive component." *Id.* (internal quotation marks omitted).

"Procedural review asks whether the sentencing court committed any error in calculating or explaining the sentence." *Id.* In assessing the procedural reasonableness of a sentence, "we review de novo the district court's legal conclusions regarding the Guidelines and review its factual findings for clear error." *United States v. Maldonado-Passage*, 56 F.4th 830, 842 (10th Cir. 2022) (internal quotation marks omitted). "Substantive review involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *Alapizco-Valenzuela*, 546 F.3d at 1215 (internal quotation marks omitted). Under that standard, "we will defer to the district court's judgment so long as it falls within the realm of rationally available choices." *United States v. Durham*, 902 F.3d 1180, 1236 (10th Cir. 2018) (ellipsis and internal quotation marks omitted).

**B.    Merits**

**1.  Procedural challenges**

Mr. Foley argues that the district court clearly erred in basing its variance[1] on a finding that the other man did nothing aggressive toward him; instead, he says, it was the other man's conduct that caused the gun to fire, and Mr. Foley's own conduct was not inherently dangerous.  We fail to see where Mr. Foley made this challenge in the district court, so we review only for plain error.  *See Alapizco-Valenzuela*, 546 F.3d at 1222.  "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* (internal quotation marks omitted).

Having reviewed the video, we cannot say the district court's finding was plainly erroneous.  Up to the point where Mr. Foley grabs the rifle and walks out of view of the camera, the other man had done nothing that might be construed as provoking Mr. Foley to retrieve the gun and follow him.  What happened during the one or two seconds the pair were off-camera is unknown, but considered as a whole, the video plausibly supports the district court's view that, rather than anything aggressive the other man may have done or said to Mr. Foley, Mr. Foley's act of

---

[1]Mr. Foley's opening brief argues as if the district court departed from the Guidelines rather than varied from them.  But his reply brief concedes that the district court imposed a variance.  Accordingly, rather than deem Mr. Foley to have waived any argument about the variance because of a briefing deficiency, we will analyze the departure arguments in the opening brief to the extent they apply to a variance.

bringing the gun to the store, removing it from the van, and following the other man

with it precipitated the struggle and resulted in at least one shot being fired.[2]

### 2.  Substantive reasonableness

Mr. Foley raises several arguments we treat as implicating substantive

reasonableness because they involve weighing "the nature and circumstances of the

offense and the history and characteristics of the defendant," § 3553(a)(1).  *See*

*Alapizco-Valenzuela*, 546 F.3d at 1215.

Mr. Foley argues that the district court erred in varying upward based on the

dangerousness of the struggle and the resulting firearm discharge because the

Sentencing Commission already took public safety into account when it fashioned

§ 2K2.1, and Mr. Foley's behavior falls within the "heartland" of that Guideline,

Aplt. Opening Br. at 48.  As Mr. Foley concedes, he did not raise this argument in

district court.  Thus, the proper standard of review may be plain error, but we need

not decide that issue because this argument lacks merit even under the less

demanding abuse-of-discretion standard.  *See United States v. Vasquez-Alcarez*,

647 F.3d 973, 976–77 (10th Cir. 2011) (recognizing that to preserve an appellate

---

[2] Mr. Foley suggests two other procedural errors.  He claims the district court may have considered improper factors—namely, his demands for different appointed counsel and his ever-changing willingness to go to trial during the COVID pandemic—which may have delayed the process for almost two years.  But this is no more than unsupported speculation.  Mr. Foley also asserts that "the district court threw out the Guidelines altogether."  Aplt. Opening Br. at 47.  We reject this argument.  The court clearly considered the Guidelines range as § 3553(a)(4) requires but concluded that an upward variance was warranted based on "the broad circumstances, including the guideline," R., Vol. 5 at 193:24–25.

6

argument that a sentence is too long, a defendant need not object in district court, but declining to decide whether one could forfeit a particular substantive-reasonableness argument because the sentence could "be affirmed under either plain error or abuse of discretion review").

We see no abuse of discretion. To begin with, we reject a premise of Mr. Foley's argument—that "[a] variance should be based on extraordinary facts." Aplt. Reply Br. at 14. "[A] district court must provide reasoning sufficient to support the chosen variance, [but] it need not necessarily provide 'extraordinary' facts to justify any statutorily permissible sentencing variance." *United States v. Smart*, 518 F.3d 800, 807 (10th Cir. 2008) (emphasis omitted). Applying the proper standard, we hold that the district court provided sufficient reasons for the upward variance—Mr. Foley created a situation that resulted in a struggle with at least one shot being fired in surroundings where someone could easily have been killed. We cannot say the district court abused its discretion in determining that "the nature and circumstances of the offense," § 3553(a)(1), go beyond any broad concept of inherent public danger stemming from a convicted felon's possession of a firearm or ammunition that the Sentencing Commission had in mind when crafting § 2K2.1(a). That guideline specifically factors in only the type of firearm, the number of prior felony convictions of the defendant, and the statutory provision under which the defendant is convicted. It does not account for any particular level of dangerousness that results from a felon's possession of a firearm or ammunition. *See United States v. Hardy*, 99 F.3d 1242, 1251–52 (1st Cir. 1996) ("Given their recognized utility and

7

ubiquity in a very broad spectrum of criminal activities, firearms presumably may be possessed in circumstances posing widely divergent degrees of dangerousness.").[3]

Mr. Foley also contends that because his criminal-history score reflected his prior convictions, it was wrong for the district court to vary upward based on the 2000 conviction, particularly given that it occurred 19 years before the instant offense and that the court simultaneously ignored that his last conviction was in 2012. He argues that by relying on the 2000 conviction, the district court effectively reinstated the four points it had subtracted from the base offense level when it determined that the 2000 conviction was not categorically a crime of violence and therefore (contrary to the PSR's calculation) the higher base offense level of § 2K2.1(a)(1) did not apply. This, he says, resulted in the district court "effectively rewriting the Guidelines to impose a higher Guideline range" and counting the 2000 conviction twice. Aplt. Opening Br. at 44.

---

[3] As best we understand, Mr. Foley also contends, in a related procedural argument, that instead of varying upward, the district court should have applied §§ 2K2.1(c)(1)(A) and 2X1.1. He claims that those sections provide the way the Guidelines take account of the situation where a firearm in the possession of a felon discharges. His argument appears to be that under § 2X1.1 the resulting offense level would have been lower than that which the district court calculated under § 2K2.1(a)(3), so the discharge of the firearm cannot justify an upward variance. Mr. Foley never raised this line of argument in the district court, so our review is for plain error. *See United States v. Torres-Duenas*,461 F.3d 1178, 1182-83 (10th Cir. 2006) (explaining that plain-error review applies "when the defendant fails to object to the method by which the sentence was determined, such as a claim that the Guidelines were misapplied"). Mr. Foley fails to meet that standard because he cites no controlling authority of this court or the Supreme Court that requires his proposed approach for determining whether to vary upward in similar circumstances.

We are not persuaded.  To be sure, "because the Guidelines carefully account for prior crimes through criminal history categories, a district court varying or departing on the basis of a conviction already considered in the criminal history score must at least explain why that score fails to reflect the seriousness of the prior crime."  *United States v. Atencio*, 476 F.3d 1099, 1106 (10th Cir. 2007), *overruled on other grounds by Irizarry v. United States*, 553 U.S. 708 (2008).  But the district court did so here.  Although it couched its discussion in terms of base offense level rather than criminal-history score, the court clearly explained that determining under the categorical approach that the 2000 conviction was not a conviction for a crime of violence resulted in a Guidelines range that failed to account for the seriousness of that conviction.  Contrary to Mr. Foley's contention, the court was well aware of the remoteness of the 2000 conviction but was nonetheless troubled that the previous conduct "so closely parallel[ed] what . . . happened here," R., Vol. 5 at 170:6–7.  *See also id.* at 193:4–6 ("[A]nd it ain't the first time that these types of risks[,] that is, firearm discharges in public places[,] ha[ve] occurred in your lifetime.").  Further, Mr. Foley's suggestion that the district court should have considered his "exemplary rehabilitation" since his last conviction in 2012, Aplt. Opening Br. at 44, rings hollow because he was incarcerated for that offense during most of that time until August 2017.  In sum, the district court did not abuse its discretion in partially basing a variance on Mr. Foley's 2000 conviction; its determination fell "within the realm of

rationally available choices," *Durham*, 902 F.3d at 1236 (ellipsis and internal

quotation marks omitted).[4]

## III.  CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Harris L Hartz
Circuit Judge

---

[4] Mr. Foley submitted to this court a Fed. R. App. P. 28(j) letter raising a constitutional challenge to his statute of conviction, 18 U.S.C. § 922(g)(1), based on *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).  But since Mr. Foley did not raise this constitutional claim in his opening brief, it is waived. *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020).  And although he touches on this *Bruen* issue in his reply brief, he may not use either a Rule 28(j) letter or a reply brief to advance a new issue:  "[W]e generally refuse to consider any . . . new issue [other than a jurisdictional problem] introduced for the first time in a reply brief, let alone in a Rule 28(j) letter."  *Niemi v. Lasshofer*, 728 F.3d 1252, 1262 (10th Cir. 2013).  We therefore decline to consider the issue.