**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**July 31, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JAMES DAVID TRUJILLO, JR.,

    Defendant - Appellant.

No. 23-1318
(D.C. No. 1:22-CR-00213-CMA-2)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

A jury convicted James David Trujillo, Jr. of bank robbery, brandishing a

firearm during a crime of violence, and being a felon in possession of a firearm. On

appeal, Mr. Trujillo argues his Sixth Amendment confrontation rights were violated

when a witness refused to answer some cross-examination questions and when the

district court later declined to recall the witness. We affirm because Mr. Trujillo's

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with Federal
Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

confrontation rights were not violated and because the district court did not abuse its discretion by declining to recall the witness.

## I.    BACKGROUND

### A.    *Factual History*

The following facts are drawn from the testimony and evidence presented at trial. We focus on the facts most relevant to Mr. Trujillo's appeal.

On June 15, 2022, at 5:35 p.m., two masked men entered a credit union in Lakewood, Colorado. One man was holding a shotgun, the other an AR-15 rifle. The men aimed their guns at the tellers and demanded money. The tellers gave them $2,779, which was all the money the credit union had. The men took the money, exited the building, and left in a waiting vehicle.

Law enforcement quickly identified Darren Michael Connolly as a suspect. Mr. Connolly wore an ankle monitor, and GPS location data from the monitor placed him at the credit union at the time of the robbery. Based on this location data, officers arrested Mr. Connolly and searched his home, where they seized a 12-gauge shotgun and an AR-15 rifle.

Officers also seized a cellphone from Mr. Connolly. The phone showed more than fifty calls between Mr. Connolly and Mr. Trujillo between June 15 (the day of the robbery) and June 16. During that time, there were also numerous text messages between Mr. Connolly and Mr. Trujillo. Some of the text messages were incriminating. For example, the morning of the robbery, Mr. Connolly texted Mr. Trujillo, "Aye fam grab my gauge and put it with the bab y [sic] hide'em." Supp.

2

ROA Vol. III at 2. At trial, an officer confirmed that "gauge" is "slang for 12 gauge." ROA Vol. III at 298.

Officers also found the vehicle used in the robbery, which led them to Christopher Nazarenus. An officer met with Mr. Nazarenus, who admitted to being the getaway driver for the robbery. Mr. Nazarenus claimed that Mr. Trujillo and Mr. Connolly entered the credit union with a shotgun and an AR-15 rifle and committed the robbery.[1]

## B.    *Procedural History*

A grand jury indicted Mr. Trujillo for bank robbery, brandishing a firearm during a crime of violence, and being a felon in possession of a firearm. Mr. Connolly and Mr. Nazarenus were indicted on similar charges but pleaded guilty.

Mr. Trujillo's case proceeded to a five-day jury trial, where the Government presented several witnesses. Mr. Nazarenus testified for the Government and was the only eyewitness who testified that Mr. Trujillo was involved in the robbery. Mr. Connolly and Mr. Trujillo did not testify.

During opening statements, defense counsel told the jury that Mr. Nazarenus was untrustworthy because he had molded and changed his story "to fit" law enforcement needs and thus avoid prison. Supp. ROA Vol. IV at 15. For example, counsel explained that when Mr. Nazarenus was arrested for the robbery, he was released on bond instead of being detained. And two weeks after being released on

---

[1] Mr. Nazarenus did not know Mr. Connolly but later identified him in a photo lineup.

3

bond, Mr. Nazarenus was arrested for motor vehicle theft, yet his bond was not revoked.

When he testified, Mr. Nazarenus described Mr. Trujillo's involvement in the robbery. Before cross-examination, the Government informed defense counsel and the court that on his attorney's advice, Mr. Nazarenus intended to invoke the Fifth Amendment in response to questions about his pending motor vehicle theft charges. Because Mr. Nazarenus intended to invoke the Fifth Amendment, the Government requested that Mr. Trujillo not be allowed to cross-examine him about the pending charges.

Defense counsel objected, arguing the pending charges were necessary for impeachment purposes and citing *Davis v. Alaska*, 415 U.S. 308 (1974). The court deferred ruling on the matter until it could review *Davis* and asked defense counsel to save questions about the pending charges until later in the cross-examination.

Counsel proceeded with cross-examination, during which Mr. Nazarenus admitted that he lied under oath when testifying before the grand jury in this case. Similarly, Mr. Nazarenus admitted that some of his statements to law enforcement about the robbery were inconsistent and untruthful. Mr. Nazarenus also confirmed he had two outstanding warrants when he met with officers to discuss the robbery, yet they did not arrest him.

At this point, the district court stated it was ready to rule on the Sixth Amendment issue. Citing *Davis*, the court explained that Mr. Nazarenus was "a key witness for the Government" and decided that Mr. Trujillo was "entitled to question

Mr. Nazarenus about his pending felony charge, particularly because his bond was not revoked." ROA Vol. III at 671.

Defense counsel continued with cross-examination and asked Mr. Nazarenus about his pending motor vehicle theft charges. Mr. Nazarenus responded by invoking the Fifth Amendment. When Mr. Nazarenus invoked the Fifth Amendment, defense counsel did not ask the district court to instruct Mr. Nazarenus to answer the questions. Instead, she began asking Mr. Nazarenus about his other offenses, and he answered those questions. He also confirmed that the Government had not asked that his bond be revoked, even though he had "picked up new cases." *Id.* at 677. Mr. Nazarenus further agreed that in exchange for his cooperation, the Government was recommending he receive probation and not a prison term.

That night, Mr. Trujillo moved to strike Mr. Nazarenus's testimony, arguing that his refusal to answer questions about his pending charges violated Mr. Trujillo's confrontation rights. Mr. Trujillo alternatively requested that Mr. Nazarenus "be recalled to testify, allowing the defense to reset the question, and properly request the [c]ourt to order Mr. Nazarenus to answer." ROA Vol. I at 80.

The district court denied Mr. Trujillo's motion. The court explained that it would have ordered Mr. Nazarenus to answer questions about the pending charges had defense counsel made that request. The court thus "determine[d] that it was error to not order Mr. Nazarenus to answer these questions." ROA Vol. III at 344. Nevertheless, the court did not strike the testimony because the jury had "sufficient information upon which to judge Mr. Nazarenus'[s] credibility," so Mr. Trujillo "was

not materially prejudiced by Mr. Nazarenus'[s] nonanswers." *Id.* at 345 (citing

*United States v. Nunez*, 668 F.2d 1116 (10th Cir. 1981)). The court thus denied the

motion to strike and the alternative request to recall Mr. Nazarenus.

At the conclusion of the trial, the jury found Mr. Trujillo guilty on all counts.

He appealed those convictions, asserting a violation of his Sixth Amendment

confrontation rights.[2]

## II.    DISCUSSION

Mr. Trujillo argues his Sixth Amendment confrontation rights were violated

when Mr. Nazarenus invoked the Fifth Amendment and refused to answer questions

about his pending charges. But Mr. Trujillo does not argue the district court erred by

not striking Mr. Nazarenus's testimony. He instead argues that "it was

[c]onstitutional error for the district court to prohibit him from recalling [Mr.]

Nazarenus." Appellant's Br. at 22 n.5.

"We review de novo whether a defendant's Sixth Amendment confrontation

rights were violated by cross-examination restrictions." *United States v. Montelongo*,

---

[2] Mr. Trujillo filed his notice of appeal outside the fourteen-day deadline for appealing in a criminal case. *See* Fed. R. App. P. 4(b)(1)(A). But in criminal cases, the deadline for filing an appeal "is not jurisdictional; instead, it is an inflexible claim-processing rule." *United States v. Lantis*, 17 F.4th 35, 38 n.3 (10th Cir. 2021) (internal quotation marks omitted). "Accordingly, we must enforce the rule only when the government properly invokes it." *Id.* (brackets and internal quotation marks omitted). The Government has not invoked Federal Rule of Appellate Procedure 4(b)'s time bar, and under the facts of this case, we decline to apply it sua sponte. *See id.* (declining to sua sponte invoke Rule 4(b)'s time bar because the case presented "no inordinate delay or problems of judicial resources or administration").

420 F.3d 1169, 1173 (10th Cir. 2005) (quotation marks omitted). But even if restrictions on cross-examination do not violate the Sixth Amendment, they may still be an abuse of discretion. *United States v. Jorgenson*, 451 F.2d 516, 519 (10th Cir. 1971) ("A limitation of cross-examination, though deemed not prejudicial to the accused's rights, may still be determined to be an abuse of discretion by the trial court."). "Abuse of discretion requires arbitrary, capricious, whimsical or manifestly unreasonable judgment." *United States v. Maldonado-Passage*, 56 F.4th 830, 837 (10th Cir. 2022) (internal quotations marks omitted).

We first explain why Mr. Trujillo's Sixth Amendment confrontation rights were not violated. We then conclude the district court did not abuse its discretion by declining to recall Mr. Nazarenus.

### A.    Sixth Amendment

The Sixth Amendment's Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The "primary interest" secured by this clause "is the right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (quoting *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id.* at 316. Thus, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316–17.

In some cases, the criminal defendant's right of cross-examination conflicts with a witness's Fifth Amendment right against self-incrimination. *United States v. Nunez*, 668 F.2d 1116, 1121 (10th Cir. 1981). If "a defendant's cross-examination is restricted by the competing Fifth Amendment right of the witness, it may be necessary to strike all or a part of the direct testimony of that witness." *Id.* But "not every invocation of the Fifth Amendment" results in a Sixth Amendment violation. *Id.* at 1122.

To determine whether a witness's testimony may be used against the defendant, "courts have drawn the line between cases in which the defendant is precluded from inquiring into collateral matters bearing only on the credibility of the witness and those cases in which the defendant is precluded from inquiring into matters about which the witness testified on direct examination." *Id.* For "collateral matters bearing only on the credibility of the witness," there is no Sixth Amendment violation if the defendant has "effective alternative means available to him to impeach the credibility of" the witness. *Id.* 1122–23.

*United States v. Nunez* is a helpful comparison. There, the defendant was accused of possessing counterfeit money. *Id.* at 1118. At trial, a government witness testified that the defendant helped him purchase counterfeit money. *Id.* at 1119. During cross-examination, the witness admitted to telling a federal agent "that he had purchased the counterfeit money to help himself out in a pending drug case." *Id.* at 1122. Defense counsel asked the witness to explain "how the money would help him on the pending state drug charge," but the witness invoked the Fifth Amendment.

*Id.* The district court would not order the witness to answer, and the defendant appealed, arguing his confrontation rights were violated. *Id.* at 1121–22.

On appeal, we concluded that the defendant had been prohibited from seeking "information that was collateral to the matters raised on direct examination." *Id.* at 1122. We next concluded that the defendant's Sixth Amendment rights were not "materially prejudiced," *id.* at 1123, because the defendant "had ample opportunity to otherwise challenge the witness's lack of credibility," *id.* at 1122. The defendant challenged the witness's credibility by cross-examining him about his criminal record, his plea-bargain agreement with the government, his past lies, and "discrepancies" between his statements to law enforcement and his trial testimony. *Id.* at 1122. And "[m]ore importantly," the defendant was able to obtain the "impeaching evidence" through a federal agent who testified that the witness intended to give the counterfeit money to law enforcement in exchange for help with his pending drug case. *Id.* at 1123. With this evidence, the defendant was able to effectively impeach the witness, and the jury had "sufficient information upon which to make a discriminating appraisal of [the witness's] credibility." *Id.*

Under *Nunez*, we must affirm the district court here. Like in *Nunez*, Mr. Trujillo sought information about pending charges that were "collateral to the matters raised on direct examination." *See id.* at 1122. Also like in *Nunez*, Mr. Trujillo "had ample opportunity to" challenge Mr. Nazarenus's credibility. *See id.* Mr. Trujillo challenged Mr. Nazarenus's credibility by asking about his lies to the grand jury, his plea bargain, the inconsistencies between his prior statements to law

9

enforcement and his trial testimony, and the fact that he was not arrested despite having outstanding warrants. And most importantly, Mr. Nazarenus admitted that the Government did not try to revoke his bond although he "picked up new cases." ROA Vol. III at 677. With this admission, testimony about the pending charges became unnecessary because the purpose of asking about the pending charges was to demonstrate that the Government did not try to revoke Mr. Nazarenus's bond.

Mr. Nazarenus's testimony provided the desired evidence to support the argument that Mr. Nazarenus would "do anything to save himself" and "received a lot of benefits" in exchange for his testimony. *Id.* at 218–19. For this reason, Mr. Trujillo "had effective alternative means" to impeach Mr. Nazarenus's credibility, and Mr. Trujillo's Sixth Amendment rights were not "materially prejudiced." *Nunez*, 668 F.2d at 1123.

Mr. Trujillo, however, argues this case is like *Davis*, where the Supreme Court concluded that limitations on a defendant's cross-examination violated the Sixth Amendment. 415 U.S. at 315–21. But in *Davis*, the witness's invocation of the Fifth Amendment resulted in such a "limited cross-examination" that the defendant could not "make a record from which to argue why [the witness] might have been biased." *Id.* at 318. Mr. Trujillo, however, had ample opportunity to demonstrate why Mr. Nazarenus might have been biased. Thus, *Davis* is inapposite.

Mr. Trujillo also attempts to distinguish *Nunez*, but his arguments are not convincing. First, Mr. Trujillo argues that unlike the defendant in *Nunez*, he is not trying to strike testimony—he merely "request[s] to recall" Mr. Nazarenus.

Appellant's Br. at 20; *see also id.* at 22 n.5. But in the district court, Mr. Trujillo did ask the court to strike Mr. Nazarenus's testimony. Moreover, Mr. Trujillo does not explain why the Sixth Amendment analysis should change depending on the remedy sought, nor does he explain what the different analysis should be.

Next, Mr. Trujillo contends that *Nunez* is distinguishable because the witness in *Nunez* refused to answer only one question. Mr. Trujillo does not cite any authority establishing a causal relationship between the number of times the Fifth Amendment is invoked and the likelihood a Sixth Amendment violation has occurred. And regardless, the holding in *Nunez* relied on a conclusion that the defendant had satisfactory alternatives—a conclusion we also reach. *See Nunez*, 668 F.2d at 1122–23.

Mr. Trujillo further argues the district court erred because unlike the defendant in *Nunez*, he did not have an opportunity for recross-examination. In support of this argument, Mr. Trujillo explains that after redirect, the district court "released [Mr.] Nazarenus and adjourned for the day with no further discussion with counsel." Appellant's Br. at 21. But Mr. Trujillo did not ask for recross-examination or object when Mr. Nazarenus was excused. As a result, this issue is not preserved, and Mr. Trujillo waived it by not arguing plain error. *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) ("When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived . . . and decline to review the issue at all—for plain error or otherwise."). Nonetheless, we perceive no error because Mr. Trujillo had sufficient opportunity to

11

challenge Mr. Nazarenus's credibility on cross-examination. *See Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir. 2000) (holding that although a defendant was not permitted recross-examination, there was "no violation of the Confrontation Clause" because "defense counsel had an opportunity to question the witness' possible bias during cross-examination").

Finally, Mr. Trujillo faults the district court for "waiting to rule on the [Sixth Amendment] issue" rather than addressing it before cross-examination. Appellant's Br. at 22. Even assuming the district court should have followed a different procedure, Mr. Trujillo had an opportunity to develop evidence of Mr. Nazarenus's motives for testifying and thus challenge his credibility. *See Nunez*, 668 F.2d at 1123; *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) ("[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.").

In short, Mr. Trujillo had "ample opportunity" to challenge Mr. Nazarenus's credibility, so his Sixth Amendment right to effective cross-examination was not violated. *See Nunez*, 668 F.2d at 1122.

### B.     Abuse of Discretion

Because Mr. Trujillo's constitutional rights were not violated, we review the district court's refusal to recall Mr. Nazarenus for abuse of discretion. *United States v. Soares*, 456 F.2d 431, 434 (10th Cir. 1972) ("The recalling of a witness for additional cross examination is ordinarily within the sound discretion of the trial court . . . ."). "A district court abuses its discretion only if its decision is arbitrary,

12

capricious, whimsical or manifestly unreasonable, or if we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Parson*, 84 F.4th 930, 937–38 (10th Cir. 2023) (brackets and internal quotation marks omitted).

Mr. Trujillo does not argue that the district court abused its discretion by not recalling Mr. Nazarenus. Instead, he argues that recalling Mr. Nazarenus would have been "reasonable and would have struck an appropriate balance." Appellant's Br. at 22. Even if that is true, it does not mean the district court "exceeded the bounds of permissible choice" by not recalling Mr. Nazarenus. *See Parson*, 84 F.4th at 938 (quotation marks omitted). And because Mr. Trujillo had "ample opportunity" to challenge Mr. Nazarenus's credibility during cross-examination, it was not unreasonable for the district court to decline to recall Mr. Nazarenus. *See Nunez*, 668 F.2d at 1122. Mr. Trujillo has not shown any abuse of discretion.

## III.   CONCLUSION

For the foregoing reasons, we AFFIRM.

Entered for the Court

Carolyn B. McHugh
Circuit Judge